Cite as 2022 Ark. App. 407

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-21-535

| | | |
|---|---|---|
| JOEY PENIX | | Opinion Delivered October 19, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE LAWRENCE COUNTY CIRCUIT COURT [NO. 38CR-20-12] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ROB RATTON, JUDGE |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

A Lawrence County jury found appellant Joey Penix guilty of raping his infant stepdaughter and sentenced him to twenty-five years in the Arkansas Department of Correction. He brings four points on appeal: (1) other than Penix's confession, there was no evidence presented that a crime was committed, precluding his conviction under the corpus delicti rule;  (2) the circuit court abused its discretion in excluding the testimony of his proposed expert witness; (3) the circuit court abused its discretion in excluding the testimony of the victim's biological father and grandmother; and (4) the Lawrence County Circuit Court had no jurisdiction over the case. We affirm his convictions.

The victim in this case, Minor Child, is the biological daughter of Kellie Elliott and Eli Hale, who dated for a few weeks while in high school. Penix and Elliott began dating

sometime after Minor Child was born and were married[1] several months before the incident in this case occurred. During the 2019 Thanksgiving holiday, Minor Child spent two nights with Hale at his family's home, and Elliott picked her up the evening of Saturday, November 30. Hale, his mother, his father, his brother, and his sister were all present at the home during the visitation. At the time, Minor Child had a rash, and Elliott had asked Hale and his mother, Dawn, to use a prescription cream on the rash instead of powder.

Shortly after picking up Minor Child, Elliott changed her diaper and noticed powder in her diaper area. She sent Hale a text message asking why he had used powder instead of the cream she provided. He said he "didn't know" and that his mom must have changed her. Elliott testified that she did not notice any injury or bleeding in Minor Child's diaper at that time. She met Penix that night around ten o'clock at the home of Josh and Marie Scroggins in Cherokee Village, where she and Penix were living. She said that Penix changed Minor Child's diaper while they were at the Scrogginses' home while she stood next to him. Sometime after midnight, she, Penix, and Minor Child went to stay in Imboden with Penix's brother and sister-in-law. Elliott said she had not noticed anything wrong with Minor Child before they went to Imboden.

After they awoke the next afternoon, Elliott noticed that Minor Child was bleeding from her genital area when she changed her diaper. She and Penix took Minor Child to

---

[1]Elliott testified at trial that, although they obtained a marriage license, they never had a ceremony and, thus, had never been legally married. At the time of the events in this case, she and Penix believed they were legally married.

Elliott's mother, who looked at the injury and suggested they take the child to the emergency room. Elliott, Penix, and Minor Child went to the White River Medical Center in Cherokee Village. Jennifer Wolverton, the nurse who treated Minor Child, noticed a small tear near Minor Child's vaginal opening between her vagina and rectal area in the perineum. She testified that Minor Child's "vaginal opening was widened, gaping somewhat at approximately four to five millimeters . . . and there was some pink-tinged liquid draining from the vaginal area." She said there really should be no opening there in an infant of that age. She opined that the injuries were caused by sexual assault. After a physician performed a physical assessment of Minor Child, Wolverton contacted the local police department to report a possible assault on Minor Child and then had the child transferred to Arkansas Children's Hospital (ACH) for a sexual-assault kit to be performed. She explained all this to Elliott and Penix. She said that Penix became increasingly nervous and anxious after she told them law enforcement had been contacted and that he was "unable to sit, paced the room, the hallway, [and] made several trips in and out the door." Officers Jeff Hamilton of the Highland Police Department and Cody Bailey of the Sharp County Sheriff's Department came to the hospital to investigate the possible abuse and spoke with both Elliott and Penix.

Taylor Rupple, a sexual-assault nurse in the emergency department at ACH, performed a sexual-assault kit on Minor Child and found a laceration at the six o'clock position inside the child's vaginal opening. Rupple testified that it was caused by "some type of penetrating trauma." Dr. Laura Hollenbach, a pediatric gynecologist at ACH, performed a vaginoscopy examination in the operating room and sutured the injury. She explained that

there was no sign of injury to the external genitalia and that the penetrating injury would have required enough force to tear through the tissue. She said the injury was unlikely to have occurred from a fall or to have been related to wiping or cleaning the area and she had "never seen an injury to that degree simply from hygiene." She said the injury was "suspicious for" sexual abuse. She also testified that an excessive amount of powder would not have stopped Minor Child's bleeding because "powder is not a hemostatic agent, meaning it doesn't typically stop bleeding of that degree." Finally, Dr. Liza Murray, a child-abuse pediatrician at ACH, also treated Minor Child and concluded that the injury was consistent with sexual abuse.

Officer McKenzie Jackson with the Arkansas State Police testified that on the morning of December 11, Penix went to the Highland Police Department and, after having been given his *Miranda* warnings and signing a statement waiving his right to have an attorney, participated in a recorded interview with Officer Jackson and Officer Hamilton. Officer Jackson provided the following summary of Penix's confession:

> While in Imboden, he was having foreplay interactions with the child's mother. He proceeded to change [Minor Child's] diaper. During that time, he'd stated that he had placed his right index finger in [Minor Child's] vagina. Upon questioning, he had stated that he inserted it all the way and that he ultimately did that for the purpose of gratification.

Penix's interview was then played for the jury. In the interview, Penix said that he had given prior statements to Officers Hamilton and Bailey but had not been completely truthful in those statements. He said he had gotten off work at around 10:00 p.m. on November 30 and met Elliott thereafter at a house in Cherokee Village. He said he, Elliott, and Minor

4

Child went to Imboden sometime after midnight. He said that he and Elliott were getting ready to have sex, and she asked him to change Minor Child's diaper. Elliott went into the kitchen to make food. He said that when he was changing her diaper, his finger went inside her. He admitted that it went deeper than he had initially told the officers and that it was not an accident. Penix said that he was not trying to hurt Minor Child but put his finger in her vagina because he was "turned on" after having been "fooling around" with Elliott, and he thought it would turn him on even more. After Officer McKenzie explained to Penix that gratification means "enjoyment," Penix admitted that he committed the act "for the sole purpose of gratification."

Penix's attorney questioned Officer Jackson at trial about his interrogation tactics, including his telling Penix that Elliott could be criminally liable and that he needed to "be a man" and tell the truth. Counsel also questioned Officer Jackson about his telling Penix multiple times that there are two types of people who commit this type of act, "monsters" or "people who make a mistake," expressing understanding for those who have made a mistake—like Penix—and are not "monsters."

Finally, Elliott testified that Penix had changed his story several times. She said that he had, at different times, claimed he might have accidentally scratched Minor Child; then, that Minor Child had tried to crawl away when he was changing her diaper and he grabbed her too hard and thought his finger might have gone inside her vagina; and, finally, that he had wiped Minor Child too hard and felt his finger go inside her vagina. The jury convicted Penix of rape and recommended a sentence of twenty-five years' imprisonment.

The relevant procedural history began on January 15, 2020, when the State filed an information charging Penix with rape for deviate sexual activity with an eight-month-old child on December 1, 2019. In an attached sworn affidavit, Eric Cheatham, a detective with the Lawrence County Sheriff's Office, stated that Minor Child had been taken to the emergency room in Cherokee Village and examined by a nurse, who told officers that Minor Child had vaginal tearing and that it was obvious she had been sexually assaulted. The affidavit alleged that the doctor on call diagnosed sexual assault, and Minor Child was transferred to ACH, examined, and treated for her injuries. Officer Cheatham also stated that Penix had admitted "forcefully pushing his finger inside" Minor Child's vagina for the sole purpose of gratification.

In April 2020, Penix notified the State that he intended to call Dr. Richard Ofshe, Ph.D., as an expert witness. He advised that Dr. Ofshe would testify about the interrogation tactics and procedures used by the police officers in this case and about certain indicators to distinguish between reliable and unreliable confessions. The State filed a motion in limine to exclude Dr. Ofshe's testimony, arguing it was unlikely to assist the jury and likely to confuse and invade the province of the jury. In June, Penix moved to suppress his confession, specifically arguing that the interrogation technique used had been found to cause innocent people to confess. Finally, Penix filed a motion to dismiss for lack of subject-matter jurisdiction, contending that the evidence suggested the injury occurred in Sharp County while Minor Child was in the custody of Eli Hale and not in Imboden, which is in Lawrence County where the action was filed.

6

The court held a hearing on Penix's motion to suppress on November 19, 2020, and determined at that hearing that Dr. Ofshe would not be allowed to testify. In an order entered on December 28, the court denied Penix's motion to suppress his confession, finding that Penix was not in custody when he gave his statement on December 11 but that if he was in custody, he voluntarily, knowingly, and intelligently waived his rights to counsel and silence before making the statement. The court held that the statements made by Penix were admissible. The court also ordered that the testimony of Dr. Ofshe would not be admissible at trial, finding specifically as follows:

> Dr. Richard Ofshe's testimony would be on the credibility of the Defendant's confessions and include how much weight the jury should give to the Defendant's confessions. This case involves issues that the jury is competent to address and understand and draw its own conclusions. This court has found and hereby ruled that all statements provided by the Defendant were freely, knowingly and voluntarily made without threat or coercion. The credibility of the statements made by the Defendant is within the province of the jury and allowing Dr. Richard Ofshe to testify would invade the province of the jury.

Finally, the court's order denied Penix's motion to dismiss for lack of subject-matter jurisdiction because Penix confessed that his actions occurred in Imboden, Lawrence County, and the court found that the confession was freely, knowingly, and voluntarily made without threat or coercion.

## I. *Sufficiency Under the Corpus Delicti Rule*

We turn first to Penix's argument that there was no substantive evidence presented at trial, other than his confession, to prove any crime had been committed, thereby precluding his conviction under the corpus delicti rule. Specifically, he contends that

7

without his confession, there is no proof beyond a reasonable doubt that a crime was committed by anyone or that Minor Child's injury was not simply an accident. He claims that the medical testimony established that the injury could have occurred while the Hales had custody of Minor Child and been masked by the powder used when Minor Child's diaper was changed. Thus, he argues, the corpus delicti was not established beyond a reasonable doubt, and his conviction must be reversed.

A confession of a defendant, unless made in open court, does not warrant a conviction unless accompanied with other proof that the offense was committed. Ark. Code Ann. § 16-89-111(d)(1) (Supp. 2021). This requirement for other proof, sometimes referred to as the corpus delicti rule, mandates only proof that the offense occurred and nothing more. *Ventry v. State*, 2009 Ark. 300, 318 S.W.3d 576. Under the corpus delicti rule, the State must prove (1) the existence of an injury or harm constituting a crime and (2) that the injury or harm was caused by someone's criminal activity. *Id.* It is not necessary to establish any further connection between the crime and the particular defendant. *Molpus v. State*, 2015 Ark. App. 452, at 3, 469 S.W.3d 374, 376. Further, the corroborating evidence need not be sufficient, by itself, to sustain the conviction. *Gipson v. State*, 2010 Ark. App. 820, at 2.

We hold that there was evidence presented in this case to establish that the crime of rape was committed by someone. A person commits rape if he or she engages in deviate sexual activity with a person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103 (Supp. 2021). "Deviate sexual activity" includes "any act of sexual gratification involving . . . the penetration, however slight, of the labia majora or anus of a person by any body

member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101 (Supp. 2021). The medical testimony established that Minor Child's vagina sustained a penetrative injury that was consistent with sexual abuse and inconsistent with an accidental cause such as a fall or cleaning during a diaper change. This evidence need not be sufficient, by itself, to sustain the conviction. *Gipson*, 2010 Ark. App. 820, at 2. There was evidence from which the jury could conclude that someone committed the crime of rape on Minor Child. Thus, we reject Penix's argument.

## II. *Expert Testimony*

For his second point on appeal, Penix argues that the circuit court committed reversible error in refusing to allow his expert, Dr. Richard Ofshe, to testify about false confessions. He contends that Dr. Ofshe is a world-renowned expert in the field, has knowledge well beyond that of the ordinary lay person, and would have explained to the jury how and why Penix could be convinced to confess despite his innocence and how his admission was unreliable. He argues that if a reasonable basis exists demonstrating that the expert has knowledge of the subject beyond that of ordinary knowledge, the expert testimony should be admitted.

We review a circuit court's decision to admit or exclude evidence for abuse of discretion, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Beard v. State*, 2020 Ark. 62, at 6, 594 S.W.3d 29, 32. With specific reference to expert testimony, Rule 702 of the Arkansas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the

trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Here, the circuit court denied Penix's motion to suppress his confession, and he has not appealed from that decision. The court specifically found the jury was competent to address, understand, and draw its own conclusions about the confession. In other words, the court did not believe that this was an area in which scientific, technical, or other specialized knowledge would assist the jury in understanding the evidence, specifically finding that the credibility of Penix's statements was "within the province of the jury and allowing Dr. Richard Ofshe to testify would invade the province of the jury." Penix had ample opportunity to cross-examine the officers regarding the interrogation and their techniques. Indeed, he did so, and then he recalled all three officers involved in any interrogation or questioning of Penix—Officers Hamilton, Bailey, and Jackson—and questioned them again in his own case-in-chief. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires a finding that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Harvey v. State*, 2021 Ark. App. 143, at 2, 619 S.W.3d 902, 904. We simply do not think the court's decision amounted to that here and hold the court did not abuse its discretion in excluding Dr. Ofshe's testimony.

III. *Exclusion of the Hales' Testimony*

10

For his next argument, Penix claims that he intended to call Eli Hale and the child's paternal grandmother, Dawn Hale, as witnesses at trial. He alleged that his intent was to establish that Minor Child's injury occurred during the two-day visitation with the Hales before Elliott picked Minor Child up on November 30. The State filed a motion to preclude defense counsel from calling any witness to testify who the "defense has reason to believe" will invoke his or her Fifth Amendment right to remain silent. The State did not name any particular witness. The court held a hearing on the matter, and Penix's counsel stated that he was not concerned that either of the Hales would "take the Fifth" and that, even if they did, he could get the transcript of their testimony from a custody hearing before the jury as unavailable witnesses. But he reiterated that he assumed they would testify. The prosecutor said he filed the motion because of his concern that defense counsel would tell the jury Eli Hale "took the Fifth" when investigators attempted to speak with him the first time. He wanted to make sure defense counsel couldn't do that. He also said the issue of what happens if a witness "takes the Fifth" on the stand at trial is something they could argue about at that time, and he did not think it was going to happen. The court stated at the hearing that if either of the Hales come to trial and "take the Fifth," the court would rule on whether the previous transcript would come in at that time, and not before. Basically, at the hearing on this motion, neither defense counsel nor the prosecutor expressed concern that either of the Hales would invoke their Fifth Amendment privilege at the trial. Indeed, both counsel expressly stated that they did not think they would do so. The court entered an order on June 2, 2021, the day the trial started, prohibiting counsel for the State and the defense

11

"from calling any witness to testify" during the trial who "counsel knows or has reason to believe will exercise his or her Fifth Amendment Right to Remain Silent" and prohibiting counsel from commenting on any witness's invocation of his or her Fifth Amendment privilege, whether it occurred during the investigation or during the trial.

The court's order did not forbid Penix from calling either of the Hales to testify at trial. Moreover, the record shows that both Eli and Dawn Hale were summoned by defense counsel to appear and testify and that both were present in the courtroom on the first day of trial. The record does not show that either was called by Penix to testify or that either invoked their Fifth Amendment privilege. Eli was actually called by the State in its case-in-chief, and Penix cross-examined him. Accordingly, this record does not demonstrate that the circuit court denied Penix his right to call either witness. An appellant who seeks relief in this court has the burden of bringing up a sufficient record upon which to grant relief. *Barker v. State*, 2014 Ark. 467, at 6, 448 S.W.3d 197, 200. It is well settled that an appellant bears the burden of producing a record demonstrating error. *Hall v. State*, 2020 Ark. App. 135, at 5, 594 S.W.3d 175, 179.

IV. *Jurisdiction*

Finally, Penix contends that the Lawrence County Circuit Court had no subject-matter jurisdiction over the case and that the court therefore erred in not granting his motion to dismiss. Penix argued in his motion that the injury occurred in Sharp County while Minor Child was in the custody of Eli Hale and not in Imboden, which is in Lawrence County,

12

where the action was filed. On appeal, he adds that no events occurred in Lawrence County except for his confession.

We first note that Penix's issue is actually not with the subject-matter jurisdiction of the circuit court. When a case is tried within the territorial boundaries of the judicial district, and it was[2], the issue is one of local jurisdiction, or venue. *See Waddle v. Sargent*, 313 Ark. 539, 855 S.W.2d 919 (1993). Venue and jurisdiction, though sometimes used interchangeably, are two distinct legal concepts. *Davis v. Reed*, 316 Ark. 575, 873 S.W.2d 524 (1994). Venue is the geographic area, like a county, where an action is brought to trial. *Id.* at 577–78, 873 S.W.2d at 525. Subject-matter jurisdiction is the power of a court to decide cases concerning the general question in controversy and presupposes control over the subject matter and the parties. *Id.*; *see also Banning v. State*, 22 Ark. App. 144, 737 S.W.2d 167 (1987). In Arkansas, a circuit court has subject-matter jurisdiction to hear and determine cases involving violations of criminal statutes. *Banning*, 22 Ark. App. at 149, 737 S.W.2d at 170. The Lawrence County Circuit Court had subject-matter jurisdiction over this case.

We take Penix's point to be that the circuit court did not have venue over the case. Arkansas Code Annotated section 5-1-111 (Repl. 2013) provides that a conviction may not be had unless jurisdiction and venue are proved beyond a reasonable doubt. The statute also provides that "the State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue." There is a

---

[2]Sharp and Lawrence counties are both in the 3rd Judicial District.

presumption that the court had venue. *Higgins v. State*, 317 Ark. 555, 879 S.W.2d 424 (1994). Before the State is called upon to offer any evidence on the question of jurisdiction or venue, there must be positive evidence that the offense occurred outside the jurisdiction of the court. *DeWitt v. State*, 306 Ark. 559, 815 S.W.2d 942 (1991). The test is whether the record contains substantial evidence showing that the offense, or elements of it, occurred within the jurisdiction and venue of the court. *Lindsey v. State*, 54 Ark. App. 266, 268, 925 S.W.2d 441, 442–43 (1996).

Here, Penix's theory of the case is that the injury could have occurred while Minor Child was in the Hales' custody in Sharp County. And he argues on appeal that he did not change Minor Child's diaper in Imboden. An argument on appeal is not evidence. There is no evidence in the record that anyone noticed that Minor Child was injured while she was in Sharp County. The evidence introduced established that Elliott and Penix spent the night with Minor Child in Imboden and that Elliott noticed blood in the child's diaper on the afternoon of December 1 in Imboden. Further, Penix told officers that he changed Minor Child's diaper in Imboden and put his finger in her vagina in Imboden. This constitutes substantial evidence that venue was proper in Lawrence County.

Accordingly, we affirm Penix's conviction.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*Chet Dunlap*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.