Cite as 2023 Ark. App. 115

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-22-444

| | | |
|---|---|---|
| JOHN A. ROBERTS | | Opinion Delivered March 1, 2023 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-21-113] |
| V. | | |
| | | HONORABLE KEN CASADY, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**STEPHANIE POTTER BARRETT, Judge**

John Roberts was convicted by a Saline County Circuit Court jury of murder in the second degree and two counts of failure to appear. He was sentenced as a habitual offender with more than four felony convictions to sixty years' imprisonment on the second-degree murder conviction and thirty years' incarceration for each of the failure-to-appear convictions. The sentences were ordered to be served consecutively, for a total of 120 years. On appeal, Roberts argues (1) there was insufficient evidence that he caused Oliver's death; (2) there was insufficient evidence that the Saline County Circuit Court had jurisdiction; (3) the circuit court abused its discretion by refusing to instruct the jury on jurisdiction; and (4) the circuit court erred by permitting the State to make an improper closing argument in

rebuttal.  We affirm the convictions, but we remand to correct an error in the sentencing order.

## I. *Facts*

The testimony relevant to the issues on appeal included that of Alexander Chief of Police Robert Burnett, who testified that on October 14, 2020, he was traveling on Highway 111 South in Alexander at approximately 9:30 in the morning, when he saw three people he believed were working on a vehicle on Vine Street.  However, as he came around the curve, he noticed a young man kicking someone lying on the ground in the middle of the street.  Chief Burnett, realizing there was a problem, turned around and came up behind the vehicle on Vine Street; by that time, according to Chief Burnett, the victim, later identified as Michael Oliver, had rolled into a field, and a person Chief Burnett identified as Roberts was still kicking Oliver in the head, neck, and shoulders.  After Chief Burnett arrived at the scene, Roberts began trying to help Oliver off the ground, which Chief Burnett testified "wasn't working out too good" because Oliver was "like a limp noodle," and he was screaming that he could not see.  Chief Burnett explained that when Roberts could not get Oliver up, he "kind of picked him up and was kind of dragging him to the car" and put Oliver in the driver's seat; Chief Burnett believed Roberts was attempting to downplay the situation by saying that they "were good."  Chief Burnett testified that even though he did not see any blood on Oliver, his condition worsened after medical assistance and backup were called; that Oliver had a lot of snot and fluid coming out of his nose and mouth; and

2

that Oliver lost consciousness and never regained consciousness before an ambulance transported him to the hospital.

Detective Sergeant Jessica Burnett of the Alexander Police Department testified that she responded to the incident for backup, and she was responsible for processing the scene. When she arrived at the scene, she found Oliver in the driver's seat of a vehicle with his head leaned back, completely unresponsive, with excessive mucus and drool coming from his mouth and nose, and he had urinated on himself. She found no weapons at the scene, and although there was no bruising, injuries, or blood she could see on Oliver, she stated that he appeared to be injured because he was "completely unresponsive."

Dr. Frank Peretti, a recently retired associate medical examiner at the Arkansas State Crime Laboratory, testified that Oliver died on November 8, 2020, and he performed Oliver's autopsy on November 10, 2020. He explained that Oliver had developed a subdural hematoma—a blood clot on his brain—as a result of the assault, and it was necessary to perform surgery to remove it and to relieve pressure on his brain; otherwise, herniation of the spinal cord would occur, rendering him brain dead. Dr. Peretti explained that Oliver's injury was contained inside of his skull, on the top of the brain; however, the excess mucus and drool, the seizures, and the inability to see were all symptoms consistent with a subdural hematoma.

Dr. Peretti determined that Oliver's cause of death was pneumonia complicating blunt-force head injuries, and the manner of death was homicide, meaning that his death was caused by another person. When asked how the manner of death could be homicide if

3

the cause of death was pneumonia complicating blunt-force head injuries, Dr. Peretti explained that Oliver had sustained significant head trauma and had undergone extensive surgical intervention; on October 21, while still recovering from surgery in the hospital, Oliver fell, hit his head, and became bedbound; he then developed pneumonia and died. Dr. Peretti opined that Oliver developed pneumonia as a result of his assault; if Oliver had not been assaulted and required surgery, he would not have been in the hospital and fallen, and he would not have developed pneumonia. Dr. Peretti considered the time from the assault on October 14 to Oliver's death on November 8 to be an uninterrupted sequence of events.

On cross-examination, Dr. Peretti admitted Oliver had begun to recover from surgery when he fell in the hospital and suffered new injuries. The new injury caused a rebleed where the first subdural hematoma occurred, and Oliver developed another blood clot.

The State rested after Dr. Peretti's testimony. Roberts moved for a directed verdict on the charge of murder in the second degree, arguing the State had failed to prove he caused Oliver's death. The State argued that there could be concurrent causes of death, but conduct that hastens or contributes to a person's death is a cause of death. The circuit court denied the directed-verdict motion, finding it was a question for the jury.

After calling one witness whose testimony is not germane to the issues on appeal, the defense renewed its directed-verdict motion, which was again denied by the circuit court. The following morning, the defense moved to reopen its case, which was allowed without objection. The defense then called Pam Wright, a geographical information systems

4

administrator for Saline County. Wright was shown a parcel map of the area where the altercation between Roberts and Oliver had occurred. The location is on the Pulaski/Saline County line, and Wright testified that all of the 8-1-0 parcel numbers on the map are billed and represented in Saline County, including the parcel in question, 810-65022-000. She explained that a parcel is not divided between counties even if it is in two counties, and that all of the parcels in question are considered to be in Saline County. Wright agreed that if part of the crime was committed on parcel 810-65022-000, which is in both Saline and Pulaski Counties, it is considered to be in Saline County.

After Wright's testimony, Roberts renewed his directed-verdict motion regarding murder in the second degree, and he added the argument that because it was unclear whether the fatal blow happened in Saline County, there was a jurisdictional issue. The State responded that venue and jurisdiction are appropriate if part of the crime occurred in Saline County, and the fatal blow did not have to occur in Saline County. The circuit court denied Roberts's motion, stating that the jury could weigh the evidence.

The State recalled Chief Burnett as a rebuttal witness. He testified that when he first saw Oliver, he was "right about" on the county line, but when he circled back around, Oliver was in a grassy area clearly in Saline County. After Chief Burnett's testimony, Roberts again moved for a directed verdict, which was again denied.

During discussion of jury instructions, Roberts requested a jury instruction based on Arkansas Code Annotated section 5-1-111 (Repl. 2013), stating that an issue of fact as to jurisdiction had been raised and that the State would need to prove beyond a reasonable

5

doubt that the incident had occurred in Saline County. The State objected, arguing that if one part of the crime happened in one county and another part of the crime happened in another county, charges could be brought in either county, and Roberts had not presented any evidence that part of the crime had not occurred in Saline County. The circuit court denied Roberts's request for the jury instruction, finding that the State was not required to prove venue or jurisdiction unless evidence was admitted affirmatively showing that the circuit court lacked jurisdiction, which it did not believe had been shown.

## II. *Sufficiency of the Evidence–Murder in the Second Degree*

Roberts argues the circuit court erred in denying his motions for directed verdict on the charge of murder in the second degree because the State failed to prove that he caused Oliver's death. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State, considering only the evidence supporting the verdict, to determine if there is substantial evidence to support the verdict. *Id.* Substantial evidence can be direct or circumstantial, and it is evidence of sufficient force and character to compel a conclusion one way or the other, with reasonable certainty, without resorting to speculation or conjecture. *Id.* The jury determines the credibility of the witnesses, and it is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

6

A person commits murder in the second degree if he or she (1) knowingly causes the death of another person under circumstances manifesting indifference to the value of human life; or (2) with the purpose of causing serious physical injury to another person, the person causes the death of any person. Ark. Code Ann. § 5-10-103(a) (Repl. 2013). Arkansas Code Annotated section 5-2-205 (Repl. 2013) provides:

> Causation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless:
>
> (1) The concurrent cause was clearly sufficient to produce the result; and
>
> (2) The conduct of the defendant was clearly insufficient to produce the result.

"Where there are concurrent causes of death, conduct which hastens or contributes to a person's death is a cause of death." *Cox v. State*, 305 Ark. 244, 248, 808 S.W.2d 306, 309 (1991).

We hold that the State provided sufficient evidence that Roberts caused Oliver's death. Dr. Peretti testified that Oliver sustained significant head trauma and underwent extensive surgical intervention as a result of Roberts's assault on him; he sustained a fall in the hospital while recovering from surgery for the injuries caused by Roberts; and he contracted pneumonia after becoming relegated to bed after the fall. Dr. Peretti explained that if Oliver had not been assaulted by Roberts, he would not have been in the hospital; he would not have sustained a fall in the hospital while recovering from surgery; and he would not have developed pneumonia as a result of being bedbound. While pneumonia may have been a cause of Oliver's death, the State produced sufficient evidence that Roberts's assault

7

on Oliver was a contributing cause to his death as well, and the jury, as the trier of fact, was entitled to believe Dr. Peretti's expert testimony as to what caused Oliver's death. The circuit court did not err in denying Roberts's directed-verdict motions.

### III. *Sufficiency of Evidence–Jurisdiction*

Roberts next argues there was insufficient evidence that the Saline County Circuit Court had jurisdiction to hear his case.[1] We disagree.

No person may be convicted of an offense unless jurisdiction and venue are proved beyond a reasonable doubt, except as provided otherwise in the statute. Ark. Code Ann. § 5-1-111(a) (Repl. 2013). Subsection (b) of this statute states that the State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue. Ark. Code Ann. § 5-1-111(b).

If an offense is committed on the boundary of two or more counties or if it is uncertain where the boundary is, either county has jurisdiction to hear the matter. Ark. Code Ann. § 16-88-108(a) (Repl. 2005). If an offense is committed partly in one county and partly in another, jurisdiction is in either county. Ark. Code Ann. § 16-88-108(c). There is a presumption that the court had venue. *Penix*, *supra*. There must be positive evidence that an offense occurred outside the jurisdiction of the court before the State is required to offer evidence of jurisdiction or venue. *Id.* The test is "whether the record contains substantial

---

[1]While Roberts designates this argument as one of jurisdiction, he does not argue that the Saline County Circuit Court did not have subject-matter jurisdiction; rather his real argument is venue—the geographic area where an action is brought to trial. *See Penix v. State*, 2022 Ark. App. 407, 654 S.W.3d 828.

evidence showing that the offense, or elements of it, occurred within the jurisdiction and venue of the court." *Penix*, 2022 Ark. App. 407, at 14, 654 S.W.3d at 836 (citing *Lindsey v. State*, 54 Ark. App. 266, 268, 925 S.W.2d 441, 442–43 (1996)).

Roberts argues that Pam Wright's testimony showed that the parcel of property where Oliver was injured, while located near the Pulaski/Saline County line, was located "entirely within Pulaski County." This is an incorrect characterization of Wright's testimony. She testified that all of the 810 parcel numbers were considered to be Saline County parcels. Chief Burnett's rebuttal testimony supported Wright's testimony: he stated that he first saw Roberts and Oliver right on the county line, but they were in Saline County when he turned around to investigate the incident. Because Roberts failed to present substantial evidence that the offense occurred outside of Saline County, the State was not required to offer evidence of jurisdiction or venue. We hold that the charges were properly brought in Saline County.

IV. *Refusal to Give Jurisdiction Jury Instruction*

Roberts next argues that the circuit court erred in refusing to instruct the jury on the jurisdictional element. Roberts's proffered instruction provided, "Arkansas Code Section 5-1-111, Burden of Proof, Jurisdiction. The issue of jurisdiction as a defense has been submitted to the jury. Any reasonable doubt on the issue requires that the Defendant be acquitted."

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Keesee v. State*,

2022 Ark. 68, 641 S.W.3d 628. The circuit court's decision to give or reject an instruction will not be reversed unless the court abused its discretion. *Id.* Because of our disposition of Roberts's jurisdictional argument, as discussed above, we hold the circuit court did not abuse its discretion in refusing to give the proffered instruction.

V. *Improper Closing Rebuttal Argument*

Roberts argues the circuit court erred in permitting the State to make the following improper closing argument in rebuttal:

> Causation is not an issue, ladies and gentlemen. He talks about—and did you see his reaction? Were you watching when they were talking about how he fell in the hospital? And that's the only time I've seen any reaction from him at all. He hasn't shown any remorse for the person who died at his hands. But when they talked about him falling in the hospital, he was over there, Yeah, yeah. Like that absolves him from responsibility, ladies and gentlemen. That's abhorrent. It's abhorrent. That fall in the hospital only happened because he beat him down so severely that he had to have brain surgery.

Roberts admits he failed to object to the prosecutor's statements at trial. Generally, issues raised for the first time on appeal, even constitutional ones, will not be considered. *Witherspoon v. State*, 2020 Ark. App. 468. Roberts nonetheless contends that his argument should be reached as one of the exceptions to the contemporaneous-objection rule found in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). Four exceptions to the contemporaneous-objection rule are set forth in *Wicks*: (1) when a circuit court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a circuit court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a circuit court should intervene on its

10

own motion to correct a serious error; and **(4)** the admission or exclusion of evidence affects a defendant's substantial rights. *Wicks*, 270 Ark. at 785–87, 606 S.W.2d at 369–70. Roberts submits that this court can reach his argument under the third *Wicks* exception—that the circuit court should have intervened on its own motion to correct the prosecutor's improper appeal to the jury's passions and emotions by commenting on his alleged lack of remorse. We disagree. In *Wicks*, our supreme court held:

> We implied in *Wilson v. State*, 126 Ark. 354, 190 S.W. 441 (1916), that no objection is necessary if the trial court fails to control a prosecutor's closing argument and allows him to go too far: "Appellant cannot predicate error upon the failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same. *See Kansas City So. Ry. Co. v. Murphy*, 74 Ark. 256, 85 S.W. 428 (1905); *Harding v. State*, 94 Ark. 65, 126 S.W. 90 (1910)."
>
> It must be noted that, first, we did not reverse the judgment in *Wilson*, and second, the quoted statement was taken essentially from the cited *Murphy* case, where we went on to say explicitly that if the court fails to restrain on improper argument, counsel should make a definite objection and call for a ruling. We have mentioned the *Wilson* suggestion in two recent cases, but in neither one was the judgment actually reversed because of the trial court's failure to act on its own motion. *Ply v. State*, 270 Ark. 554, 606 S.W.2d 556 (1980); *Wilson and Dancy v. State*, 261 Ark. 820, 552 S.W.2d 223 (1977). Thus every statement of the original *Wilson* suggestion has been obiter dictum, because no judgment has been reversed on account of the trial court's failure to intervene. Such a reversal would necessarily be an extremely rare exception to our basic rule.

270 Ark. at 786–87, 606 S.W.2d at 369–70. Our case law is clear that *Wicks* exceptions are narrow and are to be rarely applied. In *Anderson v. State*, 353 Ark. 384, 398, 108 S.W.3d 592, 600–01 (2003) (citations omitted), our supreme court held:

11

Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. Specifically, the third *Wicks* exception has only been applied to cases in which a defendant's fundamental right to a trial by jury is at issue. The third *Wicks* exception has not been applied to consider possible prosecutorial errors in relation to cross examination, to privileged testimony, or closing arguments.

*See also Tiarks v. State*, 2021 Ark. App. 325, 633 S.W.3d 788 (third *Wicks* exception has not been applied to possible prosecutorial errors in cross-examination; privileged testimony; or closing arguments). Under our case law, the third *Wicks* exception requiring the circuit court to intervene of its own accord is not applicable in this case, and Roberts's failure to object during the State's rebuttal closing argument precludes consideration of his argument on appellate review.

Although we affirm Roberts's convictions, we remand this case for the limited purpose of correcting a clerical error in the sentencing order. The State charged Roberts as a habitual offender who had previously been convicted of more than four felonies, and Roberts was sentenced accordingly. However, on the sentencing order, the habitual-offender boxes are not checked; rather, the third page of the sentencing order identifies "5-4-501 Habitual Offender" as a separate offense. Habitual-offender status is not a separate crime or offense. *Hunter v. State*, 2017 Ark. App. 256, 522 S.W.3d 793. The circuit court is free to correct a clerical error to have the judgment speak the truth; therefore, we remand to the circuit court with instructions to correct the sentencing order by marking the boxes indicating that Roberts was sentenced as a habitual offender on all three offenses and removing the improper listing of habitual offender as a separate offense. *See Carter v. State*, 2019 Ark. App. 57, 568 S.W.3d 788.

Affirmed; remanded to correct sentencing order.

ABRAMSON and GRUBER, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.