Cite as 2023 Ark. App. 245

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-22-759

| | | |
|---|---|---|
| JUSTIN LAWRENCE | | Opinion Delivered April 26, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CR-21-507] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JAMES DUNHAM, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

A Pope County jury convicted appellant of three counts of second-degree sexual assault perpetrated against Minor Child 1 (MC1) and Minor Child 2 (MC2), the daughters of his girlfriend, Melinda Parkerson. He was sentenced to an aggregate term of twenty years' imprisonment. Appellant argues on appeal that the circuit court erred by denying his motion for directed verdict as to one of the counts of sexual assault against MC1 because the State failed to prove that it took place in Pope County. We affirm.

The pertinent facts of this case are as follows: On April 19, 2021, Crystal Lawrence, the mother of appellant's children, contacted the Russellville Police Department to report that appellant had sexually assaulted their seven-year-old daughter, Minor Girl (MG), at various locations. The incident was reported to the Child Abuse Hotline, resulting in

Crimes Against Children Division (CACD) official, Deanna Cooper, investigating the allegation. MG was taken to the River Valley Child Advocacy Center (RVCAC) by Parkerson, and forensically interviewed. While being interviewed, MG disclosed that the offenses against her occurred in the State of Mississippi but that other children living at the residence in Russellville were sexually assaulted by appellant. The children were seven-year-old MC1 and ten-year-old MC2. MC1 and MC2 were interviewed at the RVCAC, and MC1 disclosed multiple incidents during which appellant touched her private area with his hands and penis. MC1 revealed that the incidents happened several times at their home in Russellville and in appellant's vehicle. She described appellant touching her private area with his hands and penis, ejaculating on her, and forcing her to masturbate his penis with her hands. MC1 did not know the exact number of times the offenses occurred but stated that they occurred "a lot of times." MC1 verbally described the offenses and physically demonstrated the actions appellant forced her to perform. MC1 denied any penetration and said appellant only touched her.

MC2 disclosed one incident that occurred at the residence in Russellville. According to MC2, she awoke during the night to find appellant touching her private area. She said that appellant was lying on the bed behind her and had his hand down the front of her pants touching her private area. MC2 described the action of appellant's hand by rubbing her finger in a circular motion on her palm. MC2 stated that when she realized what appellant was doing, she jumped out of the bed, ran to the bathroom, and locked the door until she heard him leave the bedroom. She said that appellant told her not to tell anyone about the

2

incident, but she told her sister. However, she said that she was afraid to tell her mother. MC2 also denied any penetration.

Appellant's ten-year-old son, Minor Boy (MB), was also interviewed. He stated that he witnessed appellant touching MC1's private area with his hands while they were riding in appellant's truck. He said that appellant told him to go to sleep in the back seat of the truck and made MC1 sit in the front seat. MB said that he pretended to be asleep and saw appellant put his hands in MC1's private area.

After the interviews, a warrant was subsequently issued for appellant's arrest in May. He was charged with three counts of second-degree sexual assault against MC1 and MC2. Appellant's jury trial took place on May 16–17, 2022. Cooper testified that she was assigned this case to investigate and that she observed the interviews conducted on April 19, 2021. She stated that she contacted Parkerson to bring MG to the RVCAC for an interview after allegations were made that appellant had sexually assaulted her. She said that Parkerson also brought her own children in to be interviewed.[1] Marilyn Sanders, of RVCAC, testified that she interviewed seven children in relation to the allegations of sexual assault, Parkerson's five and appellant's two. She said that she put the information obtained from the interview into a database, including the name of the alleged offender.

Parkerson testified that she has lived in Russellville for approximately a year and a half. At the time of the trial, her children's ages ranged from three to eleven. She stated

---

[1]Parkerson has five children, four girls and a boy.

3

that she and appellant developed a relationship on Facebook in September 2020 while appellant was living in Mississippi. She stated that in December 2020, they decided to get a house together in Russellville. She testified that appellant had custody of both his children at the time, so they also moved to Arkansas with him. She said that she, appellant, and the seven children would travel to Mississippi about every month and a half to either take MG and MB to meet Crystal or to go see appellant's family. Due to the large size of the family, they would go in two vehicles, her SUV and appellant's truck. She stated that MC1 would sometimes ride with appellant during these trips. She said that they went to Mississippi several times between December 2020 and April 2021.

Benjamin Tucker of the Russellville Police Department testified that he was the investigator assigned this case. He stated that he was not present when MC1 and MC2 were interviewed, but he received a copy of the recorded interview. He said that he received a call from appellant's attorney and was able to schedule an interview with appellant for April 26. Appellant was allowed to go back to Mississippi after the interview.

MB testified that he and MG moved to Russellville with appellant and that Parkerson and her five children also lived there. He stated that appellant would make him and MC1 switch seats when they traveled to Mississippi. According to MB, Parkerson did not like MC1 to sit in the front of appellant's truck because of her young age, but "once [they] got down the road, [appellant] would make [MC1] get in the front seat." MB said that on one trip to Mississippi, after appellant had made him and MC1 switch seats, he saw appellant's hands "where [MC1's] private was." He explained that MC1's private is her "vagina." He

4

said that when they stopped at a gas station on the day in question, MC1 "had a dollar, which she didn't have before." He also stated that appellant was being "like very nice" to him when they stopped at the gas station. On cross-examination, MB stated that they had been in the truck approximately two hours when he witnessed appellant touching MC1. He also testified that he only saw this happen once.

MC2 testified that she refers to her vaginal area as her "front butt" and the butt as either "butt" or "back butt." She stated that all four girls shared a room but that she had a bed to herself. She said that one morning, appellant got into her bed and touched her front butt while she was sleeping. When asked to demonstrate, she rubbed her hand in a circular motion. She stated that she was afraid, so ran into the bathroom and locked the door. She testified that this only happened once and that they were living in Russellville at the time. She said that she did not tell Parkerson of this incident until April 19, 2021, but that she had told another one of his sisters, Minor Child 3 (MC3), right after it happened.

MC1 testified that she calls breasts either "mosquito bites" or "boobies." She also calls her vagina the "front butt" and the butt the "back butt." She stated that the penis is called the "wiener dog." She said that she would ride in the front of appellant's truck but that Parkerson did not know. She testified that appellant would put his hands inside her clothes and touch her front and back butt when she rode with him. She also stated that appellant touched her on the outside of her front butt with his "hot dog." MC1 said that appellant touched her front butt and back butt in Parkerson's bedroom and bathroom. She denied that he ever touched her with his penis in the home. However, she said that he asked

her to touch his hot dog and would have her to move her hands in an up and down motion and that "white stuff" would come out of it. She stated that this happened more than once. On cross-examination, MC1 stated that the touching happened "every day when [Parkerson] was dating [appellant]." On redirect, MC1 testified that it happened "a bunch of times."

After the State rested, appellant moved for directed verdict as to one of the counts of sexual assault against MC1, arguing that if the incident in the truck was a charged count, the State failed to show that it took place in Pope County because MB testified that they had been in the truck for about two hours when he witnessed appellant touching MC1. The State argued that the incident testified to by MB was just to show the manner in which appellant operated when he touched MC1 while she was riding in the truck with him. The State further contended that MC1 testified that appellant had touched her many times in the truck. The circuit court stated that it understood the evidence to be that there were many times in which the conduct took place in Pope County and that the evidence suggested that it also took place in a variety of other places, that were not charged. The circuit court subsequently denied the motion. Appellant then cited Arkansas Code Annotated section 5-1-111(b)[2] to show that venue is an affirmative defense.

Appellant testified in his own defense. He denied ever touching the victims or having MC1 touch him. He also denied that MC1 ever rode in the front seat of his truck. He suggested that maybe MC1 saw him and Parkerson engaged in a sexual act once and learned

_____

[2](Repl. 2013).

6

the masturbation motion from that. Appellant's sister, Courtney Brown, testified that appellant is not the kind of person to do what is alleged. Appellant's father, Ricky Lawrence, also testified that he did not believe appellant was capable of doing what he is accused of doing.

Appellant unsuccessfully renewed his directed-verdict motion at the conclusion of all the evidence. He was found guilty and sentenced to twenty years in the Arkansas Department of Correction. The sentencing order was filed on May 27, 2022, and appellant filed a timely notice of appeal.

Appellant argues on appeal that the circuit court erred by denying his motion for directed verdict based on lack of venue. To the extent appellant tries to challenge the State's contention that the truck incident was used to show a continued course of conduct, appellant did not challenge it below and cannot do so now. Arguments not raised at trial will not be addressed for the first time on appeal.[3] When a case is tried within the territorial boundaries of the judicial district, the issue is one of local jurisdiction, or venue.[4] Venue is the geographic area, like a county, where an action is brought to trial.[5] No person may be convicted of an offense unless jurisdiction and venue are proved beyond a reasonable doubt,

---

[3]See *Walden v. State*, 2023 Ark. App. 177, ___ S.W.3d ___.

[4]*Penix v. State*, 2022 Ark. App. 407, 654 S.W.3d 828.

[5]*Id.*

except as provided otherwise in the statute.[6] Subsection (b) of this statute states that the State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue.[7] There is a presumption that the court had venue.[8] Before the State is called upon to offer any evidence on the question of jurisdiction or venue, there must be positive evidence that the offense occurred outside the jurisdiction of the court.[9] The test is whether the record contains substantial evidence showing that the offense, or elements of it, occurred within the jurisdiction and venue of the court.[10]

Here, the State put forth evidence via the testimony of MC1 that appellant sexually assaulted her at their home in Russellville many times. When questioned further, she stated that the sexual assault happened every day while appellant was dating Parkerson. This testimony is sufficient to show that the sexual assault occurred within the venue of Pope County.[11] The circuit court stated, and we agree, that the State could have charged appellant with more than two counts of sexual abuse against MC1, but it did not. However, the

---

[6]Ark. Code Ann. § 5-1-111(a) (Repl. 2013).

[7]Ark. Code Ann. § 5-1-111(b).

[8]*Penix*, *supra*.

[9]*Id.*

[10]*Id.*

[11]*See Lindsey v. State*, 54 Ark. App. 266, 925 S.W.2d 441 (1996) (victim's testimony regarding the location of sexual abuse was sufficient).

evidence was sufficient to show that appellant sexually assaulted MC1 in the home in Russellville at least twice. Accordingly, the circuit court did not err in finding that both charges against appellant for the sexual assault of MC1 occurred within its jurisdiction and venue.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.