KENNETH S. HIXSON, Judge
Appellant Brian D. Mudd was convicted in a jury trial of felony theft by receiving, possession of methamphetamine, and possession of drug paraphernalia with the purpose to inject, ingest, or inhale methamphetamine.[1] Mudd was sentenced as a habitual offender to three consecutive fifteen-year prison terms. Mudd now appeals, and his sole argument is that there was insufficient evidence to support the verdicts. We affirm.
The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Bohanan v. State , 72 Ark. App. 422, 38 S.W.3d 902 (2001). Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty without resort to speculation or conjecture. Breedlove v. State , 62 Ark. App. 219, 970 S.W.2d 313 (1998). We review the evidence in the light most favorable to the State, considering only the evidence that tends to support the verdict. Morton v. State , 2011 Ark. App. 432, 384 S.W.3d 585.
Paul Murphy testified that he has a collection of old gas and oil signs from the 1940s and 1950s. He kept some of these signs under and in front of a shed at his house. One morning Murphy noticed that some of his signs were missing, and he contacted the police. Murphy told the police that an acquaintance had told him that the signs were located at a residence at 6939 McClure Road in Miller County and that there would be a red truck parked in front of the house.
Several police officers who participated in the investigation testified at trial. One of the officers testified that when Murphy called to report the stolen signs he mentioned the name "Mudd," and that the police were familiar with Mudd from previous encounters.[2] The officer also stated that he knew Mudd lived at the McClure Road address with his roommate, Tobey McCarley.
*156 Police officers went to the residence and found a red truck belonging to McCarley backed up to the front porch. The police immediately noticed some old gas and oil signs leaning against the front porch and partially covered by a tarp. The police knocked repeatedly on the door but got no answer. Murphy was called to the scene, and he identified the signs as belonging to him.[3] Because some of the missing signs were not found next to the porch, the police obtained a warrant to search the house for the remaining signs.
When the police executed the search warrant, they initially did not find any occupants. However, one of the officers noticed someone hiding under the bed in a back bedroom and ordered him to come out. This person was Mudd, and he came out from under the bed as directed. The police found a rifle and a handgun under the bed where Mudd had been hiding. A marijuana cigarette was found on the nightstand in the bedroom. Mudd was handcuffed, and he told the police that someone was hiding under the couch in the living room.
The police looked under the living-room couch and found McCarley hiding there. A small baggie was under the living-room television and was partially visible. After seeing the baggie, the police obtained another warrant to search the residence for narcotics. When executing that search warrant, the police found syringes in the area where McCarley had been hiding. On the living-room coffee table were marijuana pipes, rolling papers, and a spoon containing a white residue. The baggie that was under the television was sent to the crime lab and was found to contain 0.7 grams of methamphetamine. The police did not find any additional stolen signs inside the house.
One of the police officers testified that there were surveillance cameras outside the residence. The police cars parked in front of the residence were being live-streamed on the living-room television.
The officers did not find any mail, utility bills, or any other items containing Mudd's name in the residence. The police did, however, find some work shirts bearing McCarley's name.
Mudd's only argument on appeal is that there was insufficient evidence to support his convictions for theft by receiving, possession of methamphetamine, and possession of drug paraphernalia with the purpose to inject, ingest, or inhale methamphetamine. Specifically, Mudd contends that the State failed to prove he possessed or exercised control over any of the contraband found at the residence. We disagree.
A person commits theft by receiving when he or she receives, retains, or disposes of stolen property of another person, either knowing or having good reason to believe the property was stolen. Ark. Code Ann. § 5-36-106(a) (Repl. 2013). A presumption that a person knows or believes property was stolen arises when there is unexplained possession or control by the person of recently stolen property. Ark. Code Ann. § 5-36-106(c)(1). Arkansas Code Annotated section 5-64-419(a) and (b)(1) (Repl. 2016) make it unlawful to possess methamphetamine. Arkansas Code Annotated section 5-64-443(a)(2) (Repl. 2016) makes it unlawful to possess drug paraphernalia with the purpose to inject, ingest, or inhale methamphetamine.
*157 The State need not prove actual possession of contraband to prove possession; it may be proved by constructive possession, which is the control or the right to control the contraband. Polk v. State , 348 Ark. 446, 73 S.W.3d 609 (2002). Constructive possession can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. Harjo v. State , 2017 Ark. App. 337, 522 S.W.3d 839. Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. Id. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. Id. In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. Id. Control over the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. Nichols v. State , 306 Ark. 417, 815 S.W.2d 382 (1991).
Mudd was not in actual possession of any of the stolen signs, the methamphetamine, or the drug paraphernalia. Therefore, the State had to present proof that Mudd constructively possessed these items. Because Mudd jointly occupied the residence with McCarley, there must be some additional factor linking Mudd to the contraband. We hold that the State's proof of constructive possession was sufficient.
In support of Mudd's argument, he asserts that the police found nothing in the residence bearing his name. He further asserts that none of the contraband was located in the bedroom where he was hiding.
We hold on the evidence presented that there was substantial evidence to support the jury's finding that Mudd was in constructive possession of the contraband found at the residence. Mudd had listed this residence as his address eight months earlier, and there was testimony by a police officer that he knew Mudd lived there with his roommate. Although the contraband was not found in the bedroom where Mudd chose to hide from the police, it was found in plain view in common areas in and around the house.
The fact that drugs were found in common areas of the residence has been considered a linking factor to establish constructive possession. Lueken v. State , 88 Ark. App. 323, 198 S.W.3d 547 (2004) ; Sweat v. State , 25 Ark. App. 60, 752 S.W.2d 49 (1988). In Sweat , this court found sufficient linking factors to support a finding that appellant was in constructive possession of marijuana found in his mother's home. Sweat also lived there; he was present when the search was conducted; and marijuana was found in the common areas of the house, in the refrigerator and on top of the freezer. In Sweat , drug paraphernalia was also found on the kitchen table.
In the instant case, Mudd was present in the residence when the search was conducted. The contraband was found in common areas of the house. Moreover, the contraband was in plain view. These were additional factors linking Mudd to the contraband. The baggie containing methamphetamine was under the living-room television and partially visible to officers, resulting in the officers obtaining an additional warrant to search for drugs, and the drug paraphernalia was on the living-room table. Some of the stolen signs found next *158 to the front porch were in plain view, as the tarp was only partially covering some of the signs. The fact that Mudd was in a bedroom hiding under a bed when the search commenced does not negate the additional factors linking Mudd to the contraband. Because there was substantial evidence that Mudd was in possession of the stolen signs, the methamphetamine, and the drug paraphernalia, we affirm each of his convictions.
Affirmed.
Abramson and Virden, JJ., agree.

Mudd was also charged with simultaneous possession of drugs and firearms, but he was acquitted of that charge.

When Mudd had set up payments related to a prior conviction eight months earlier, he indicated to authorities that his address was 6939 McClure Road.

Murphy testified at trial that he paid a total of $3600 for the signs that were found leaning against the porch. Mudd makes no argument on appeal that the State failed to prove that the value of the stolen signs exceeded $1000, which is the threshold for Class D felony theft by receiving. See Ark. Code Ann. § 5-36-106(e)(3)(A) (Repl. 2013).