Cite as 2024 Ark. App. 431

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-23-760

| | |
|---|---|
| JAMES SHERWOOD EDWARDS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered September 18, 2024<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT<br>[NO. 02CR-22-164]<br><br>HONORABLE CREWS PURYEAR, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**CINDY GRACE THYER, Judge**

Appellant James Sherwood Edwards was charged by amended information with one count of possession of more than ten grams of cocaine with purpose to deliver, one count of possession of clonazepam with purpose to deliver, one count of possession of marijuana with purpose to deliver, and one count of possession of drug paraphernalia with the purpose to package or process cocaine. An Ashley County jury convicted him on all counts and sentenced him to a total of 115 years and $42,500 in fines. On appeal, Edwards challenges the sufficiency of the evidence. In addition, he argues that the circuit court erred in denying his *Batson* challenge, that the State was allowed to misstate the law regarding parole eligibility during its closing arguments, and that the court erred in determining that he was a habitual

offender when the criminal information contained no such allegation. We find no error and affirm.

## I. *Sufficiency of the Evidence*

In his first point on appeal, Edwards argues that the evidence presented at trial was insufficient to support his convictions. When reviewing a challenge to the sufficiency of the evidence, we must assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *McKisick v. State*, 2022 Ark. App. 426, 653 S.W.3d 839. A conviction will be affirmed if substantial evidence exists in the record to support it, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Burciaga v. State*, 2024 Ark. App. 341, 690 S.W.3d 456.

We thus turn to the evidence presented at trial. Investigator Tad Huntsman of the Ashley County Sheriff's Department along with other law enforcement officers executed a search warrant at Edwards's home in Crossett on June 16, 2022. At trial, Huntsman testified that during the course of that search, a clear zipper baggie of round blue pills identified as clonazepam and two pill bottles containing powdered and crack cocaine were found in the front hallway of Edwards's trailer inside a heating-and-cooling system. Huntsman said that there was no doorway on the heating-and-cooling system, and it was "just open and you could walk by and see this." Photographs of the items showed that they were plainly visible inside the unit. At the time the baggie and pill bottles were discovered, Edwards was standing right beside them. One set of digital scales was found on a table in the kitchen; a second set of

2

scales and a plastic container holding numerous individual zip-top baggies were located inside a kitchen cabinet. Huntsman further testified that Edwards told him that the house was his. Additionally, Huntsman acknowledged that when the warrant was executed, three other individuals were present: Tyneshia Sterling and Samantha Maxwell were inside the house, and Brad Hayes was outside in the driveway.

After his arrest, Edwards gave a statement to Huntsman. Huntsman asked Edwards "about what went down this morning," and Edwards replied, "Yeah, I guess so. Actually, man, ain't nobody else--I'm the first person? You know, I'm in control of the spot[.]"Huntsman asked if the trailer belonged to Edwards, and Edwards said it did and that other people "just come and go." Edwards suggested that the drugs belonged to Brad Hayes, who occasionally stayed with him.

In fact, Hayes testified during Edwards's case in chief that the drugs were his. The State, however, called Investigator Josh Pollock in rebuttal. Pollock testified that while the search of the home was ongoing Hayes did try to tell him the drugs were his (Hayes's). Pollock told Hayes that if Hayes could tell him what the drugs were, he would let him take the charges. Hayes was unable to do so, so Pollock did not "find him to be credible."

On appeal, Edwards argues that the evidence was insufficient to support his convictions, asserting that the proof presented at trial did not demonstrate that he possessed the narcotics and paraphernalia. Under Arkansas law, possession may be established by proof of actual possession or constructive possession. *Martin v. State*, 2019 Ark. App. 509, 587 S.W.3d 623. Constructive possession is the control of or right to control the contraband.

3

*Matlock v. State*, 2015 Ark. App. 65, 454 S.W.3d 776. Constructive possession may be established by circumstantial evidence and can be inferred where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Szczerba v. State*, 2017 Ark. App. 27, 511 S.W.3d 360.

Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. *Mudd v. State*, 2018 Ark. App. 628, 565 S.W.3d 154. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839. In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. *Id.* Control over the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Boyd v. State*, 2014 Ark. App. 336. Moreover, the fact that contraband is found in common areas of the residence has been considered a linking factor to establish constructive possession. *Id.*

We disagree with Edwards that the proof set out above was insufficient to establish the necessary linking factors to support a finding that he constructively possessed the drugs. The evidence showed that the residence belonged to Edwards, which was found to be a linking factor in *Burrow v. State*, 2010 Ark. App. 692, at 5. Edwards was standing "right beside" the heating-and-cooling unit where the cocaine and clonazepam were found and was thus in "close proximity" to the contraband. *See Alexander v. State*, 2011 Ark. App. 610, at 4

4

(defendant was arrested in close proximity to the large amount of cocaine in a toilet). The scales on the kitchen table were in plain view. *See Loggins v. State*, 2010 Ark. 414, at 6, 372 S.W.3d 785, 790 (firearms and controlled substances were in plain view in rooms throughout the house, including the room where defendant had been just prior to police search). In short, there were multiple linking factors tying Edwards to the contraband. Jurors do not and need not view each factor in isolation but rather may consider the evidence as a whole. *Bridges v. State*, 46 Ark. App. 198, 202, 878 S.W.2d 781, 784 (1994).

Edwards nonetheless contends that there was evidence that cast doubt on the State's case. Specifically, he cites Hayes's testimony that the drugs belonged to him as well as the fact that the pill bottles in which some of the drugs were found bore the name of Racania Scarver.[1] These facts, he argues, cast doubt on the State's "circumstantial" case and caused the jury to resort to speculation and conjecture in order to convict him. We disagree. The matter of Hayes's testimony was a credibility issue for the jury to resolve. *See Mendoza v. State*, 2024 Ark. App. 322, 689 S.W.3d 475 (noting that the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence). As to the pill bottles with Scarver's name, as the State notes, there was no proof that Scarver was present

---

[1]Edwards also points to testimony that either Sterling or Maxwell had a drug pipe on her person and was arrested for that offense. This testimony, however, was presented at a pretrial bond-reduction hearing and was not introduced at Edwards's jury trial.

in the house or even that she had recently been there. Again, this was a question for the jury to resolve.

Viewing the evidence in the light most favorable to the State and indulging the jury's assessment of the witnesses' credibility, we therefore conclude that substantial evidence supported Edwards's convictions and affirm.

## II. Batson *Challenge*

In his second point on appeal, Brown argues that the circuit court erred in overruling his *Batson* challenge to the State's peremptory strike of an African-American juror. Pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), the State in a criminal case may not use its peremptory strikes to exclude jurors solely on the basis of race. *Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009). Once a challenge is made, the circuit court must conduct a three-step inquiry to determine whether a *Batson* violation occurred. *McMiller v. State*, 2014 Ark. 416, 444 S.W.3d 363. First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. *Id.* Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strikes. *Id.* Unless discriminatory intent appears in the prosecutor's explanation, the reason given will be considered race neutral. *Flowers v. State*, 362 Ark. 193, 204, 208 S.W.3d 113, 122 (2005). Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. *McMiller, supra.* On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Nelson v. State*, 2024 Ark. 24, 683 S.W.3d 177.

6

Edwards's *Batson* challenge focuses on juror 16. During voir dire, the potential jurors were asked if they knew any of the parties or witnesses. Juror 16 offered that she worked for the mother of one of the witnesses for a while. At the conclusion of voir dire, the trial transcript states simply that the State and defense counsel "ma[d]e their strikes." The nature of the strikes and the parties' reasoning for them is not stated on the record. At a bench conference, however, the court noted that the State had moved to strike juror number 6, juror number 40, and juror number 16. The court asked if there was any objection to those strikes. The following exchange then took place:

DEFENSE: Well, I think it appropriate to put on the record that my client is African-American, and that the State is striking the only African-American [juror 16] that could potentially be put on the jury as a juror. *Now, I asked him what his grounds were for, and I agreed with what he said his grounds were.* It happened. I think it's appropriate to put that on the record though.

COURT: Any response needed on the record?

STATE: No, sir.

(Emphasis added.)

On appeal, Edwards greatly expands his *Batson* arguments. In his brief, he claims that the State struck juror 16 because she "had a relationship with the defendant," which he contends was "not a legitimate race-neutral explanation as Juror 16 made no statements evincing a relationship with the defendant." He therefore asserts that the State's reason for striking juror 16 "was both incorrect and pretextual" and that the "court's finding that this explanation was plausible was against the preponderance of the evidence." He further asserts

7

that "[n]one of the reasons pointed to by the State for striking Juror 16 were correct or unique to her, and the State did not attempt to excuse several other jurors to which the same purported relationship applied."

It is apparent from the record, as quoted above, that Edwards did not make the argument he makes on appeal—that the State's reasons for striking juror 16 were pretextual—to the circuit court. He merely observed that the State had struck the only African-American member of the venire. A *Batson* challenge that is not made to the circuit court is not preserved for appeal. *Riley v. State*, 2009 Ark. App. 613, at 11, 343 S.W.3d 327, 334 (citing *Weston v. State*, 366 Ark. 265, 234 S.W.3d 848 (2006); *Owens v. State*, 363 Ark. 415, 214 S.W.3d 849 (2005)). We therefore hold that Edwards's arguments concerning his *Batson* challenge are not preserved for appeal.

We also note that, contrary to Edwards's argument on appeal, it does not appear that the State ever argued that juror 16 should be struck because she had a relationship with the defendant. Indeed, there is no mention on the record as to exactly what the State's explanation for striking juror 16 was. Instead, the record states only that the parties "made their strikes." Moreover, whatever the State's reason for striking juror 16 was, *Edwards stated on the record that he agreed with it.* One cannot agree at trial that the State's explanation for striking a juror was acceptable and then argue on appeal that it was not. *See, e.g., Boose v. State*, 2017 Ark. App. 302, at 12, 523 S.W.3d 366, 373. Accordingly, we affirm on this point.

III.  *Closing Arguments*

8

Edward's next point on appeal is that the circuit court erred by allowing the prosecutor to misstate the law regarding parole eligibility during its closing argument. He asserts that the State "informed the jury numerous times that Edwards *would* be released at the minimum time to serve before parole eligibility." (Emphasis in original.) This prejudiced him, he claims, because the jury sentenced him to the maximum possible term of years, which he suggests it might not have done if it had been given the correct information.

A circuit court has broad discretion to control counsel in closing arguments. *Muldrew v. State*, 331 Ark. 519, 522, 963 S.W.2d 580, 581 (1998). We do not overturn a circuit court's ruling on an objection to a closing argument without a manifest abuse of discretion. *Bragg v. State*, 2023 Ark. 66, at 9, 663 S.W.3d 375, 381.

That said, however, a party must object to the allegedly improper closing argument in the first instance. Edwards concedes that he did not object to the State's closing argument, and our review of the record confirms this. Edwards nonetheless contends that this court can reach the merits of his argument under the third exception to the contemporaneous-objection rule described in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). We disagree.

To preserve an issue for appeal, a defendant must object at the first opportunity. *Tiarks v. State*, 2021 Ark. App. 325, at 11, 633 S.W.3d 788, 796. Issues raised for the first time on appeal, even constitutional ones, generally will not be considered. *Witherspoon v. State*, 2020 Ark. App. 468. In *Wicks*, however, the supreme court recognized four exceptions to this rule. The third exception, which Edwards asks us to apply here, concerns issues for which the circuit court had a "duty to intervene, without an objection, and correct a serious

error either by an admonition to the jury or by ordering a mistrial." 270 Ark. at 786, 606 S.W.2d at 369.

Since the decision in *Wicks*, however, the supreme court has said this exception "is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof." *White v. State*, 2012 Ark. 221, at 10, 408 S.W.3d 720, 726. *Wicks*'s exceptions to the contemporaneous-objection rule are "rarely applied." *Roberts v. State*, 2023 Ark. App. 115, at 12, 662 S.W.3d 668, 676 (quoting *Anderson v. State*, 353 Ark. 384, 398, 108 S.W.3d 592, 600–01 (2003)). Moreover, pertinent to the issue raised herein, this court has specifically held that the third *Wicks* exception is not applicable to prosecutorial errors in closing argument. *Id.*, 662 S.W.3d at 676 (citing *Tiarks*, 2021 Ark. App. 325, at 11–12, 633 S.W.3d at 796); *see also Chunestudy v. State*, 2012 Ark. 222, at 7, 408 S.W.3d 55, 61 (declining to apply third *Wicks* exception when the prosecutor, during closing arguments, allegedly improperly commented on a defendant's constitutional right to remain silent).

The cases that Edwards cites do not compel a different result. *Ayala v. State*, 365 Ark. 192, 226 S.W.3d 766 (2006), involved the defendant's fundamental right to a jury trial. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003), held that the State's impermissible shifting of the burden of proof to the defendant during voir dire fell within the third *Wicks* exception. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997), held that the circuit court's failure to comply with Arkansas Code Annotated section 16-89-125(e), which requires jurors' questions during deliberations to be addressed in open court, violated the defendant's right

10

to be present at a substantial step in the proceedings to such an extent that no contemporaneous objection was required. And *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995), held that the right to trial by jury was a matter that could be raised without a contemporaneous objection. None of these cases address the failure to object to a prosecutor's closing argument, which, as noted above, has been repeatedly found to not fall within the ambit of the third *Wicks* exception. *See Chandler v. State*, 2024 Ark. App. 260, 688 S.W.3d 170; *Burnett v. State*, 2023 Ark. App. 242, 665 S.W.3d 283; *Tiarks, supra*. We therefore affirm on this point without addressing the merits of Edwards's argument.

IV.  *Habitual-Offender Allegations*

Finally, Edwards argues that the circuit court erred in determining that he was a habitual offender when the State never included an allegation to that effect in the information. He asserts that the State "never actually charged [him] as a habitual offender in the felony information or amended information as required by statute and case law." He therefore claims that he was prejudiced because "the jury would otherwise not have heard [that he] was subject to an extended term of imprisonment as a habitual offender."

Whenever the State seeks to charge one as a habitual offender, the previous offense is an essential element of the crime charged; thus, the habitual-offender allegation must be included in the felony information. *Finch v. State*, 262 Ark. 313, 556 S.W.2d 434 (1977). The purpose of this requirement is to afford a defendant notice of essential elements upon which the State relies for assessment of punishment and to give him the opportunity to refute such assertions. *Id.* We have held that a felony information containing general language

11

referring to the habitual-offender statute is sufficient to put the defendant on notice that his prior convictions may be introduced in assessing an enhanced sentence. *Wilson v. State*, 251 Ark. 900, 475 S.W.2d 543 (1972) (holding that although the felony information did not specifically list the defendant's prior convictions, the information was sufficient because it contained language explaining that the charges were filed under the habitual-offender statute).

A defendant's argument that he was not put on notice that he is being charged as a habitual offender, however, must be raised at trial in order to preserve the issue for appellate review. *See Cantrell v. State*, 2009 Ark. 456, at 11, 343 S.W.3d 591, 597 (holding that an alleged error regarding lack of notice regarding a defendant's habitual status is a question of due process, and even "constitutional arguments may not be raised for the first time on appeal.").

As the State notes, there were multiple opportunities for Edwards to raise an objection regarding his habitual-offender status. The circuit court commented at a pretrial bond hearing that "the information shows six to fifty [years as a possible sentence], I believe, *but it's alleged that you're a four or more habitual*, so I think [the] correct term would be six to sixty." Edwards did not object. During discussions concerning jury instructions, the court observed that Edwards was subject to a sentence of six to sixty years for the Class A felony, no more than fifteen years for the Class D felony, and five to forty years for the Class B felony. Although each of these sentencing ranges tracks with Arkansas Code Annotated

12

section 5-4-501(b), which governs sentencing for habitual offenders,[2] Edwards again did not object. The State and Edwards then spent considerable time discussing Edwards's previous convictions and how many of them would be presented to the jury. The court asked if Edwards had any objection to the final number, and he replied, "I ain't got no––hey, I wish I could, but I can't." Edwards's failure to object at any of these moments renders his argument unpreserved and precludes our consideration of it on appeal.

Even if it were preserved, however, Edwards's argument is without merit. Although neither the information nor the amended information expressly referenced Arkansas Code Annotated section 5-4-501 (Supp. 2023), both of them explicitly advised that Edwards, "having previously been convicted of four or more felonies," was subject to an enhanced sentencing range for each of the three felonies with which he was charged. As noted above, a felony information containing general language referring to the habitual-offender statute is sufficient to put the defendant on notice that his prior convictions may be introduced in assessing an enhanced sentence. *Wilson*, *supra*. The language in the information and amended information alleging that Edwards had been "previously been convicted of four or more felonies" tracks the language in section 5-4-501(b)(1) (which refers in multiple

---

[2]*Compare* Ark. Code Ann. § 5-4-501(b)(2)(B) (setting sentencing range for Class A felony at six to sixty years; § 5-4-501(b)(2)(C) (setting sentencing range for Class B felony to five to forty years); § 5-4-501(b)(2)(E) (setting sentencing range for Class D felony at not more than fifteen years) *with* Ark. Code Ann. § 5-4-401(a)(2) (Repl. 2013) (setting sentencing range for Class A felony at six to thirty years); Ark. Code Ann. § 5-4-401(a)(3) (setting sentencing range for Class B felony at five to twenty years); Ark. Code Ann. § 5-4-401(a)(5) (setting sentencing range for Class D felony at not more than six years).

subsections to a defendant who "has previously been convicted of four (4) or more felonies"). This "general language" was sufficient to alert Edwards that the habitual-offender statute was in play, and his argument to the contrary is without merit.

Although we affirm Edwards's convictions, we remand the case to the circuit court to correct a clerical error. The jury's verdict forms indicated that Edwards was sentenced to pay a fine of $15,000 for his conviction of possession of cocaine; $10,000 for his conviction of possession of clonazepam; $2,500 for his conviction for possession of marijuana; and $15,000 for his conviction for possession of drug paraphernalia. The court imposed the sentence recommended by the jury--a total of 115 years' imprisonment and fines totaling $42,500. The sentencing order, however, reflects a fine of only $2,500. We therefore remand to the circuit court so that the sentencing order can be corrected to show a total fine of $42,500. *See Sizemore v. State*, 2015 Ark. App. 728, at 8–9, 478 S.W.3d 281, 285–86 (holding that a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order).

Affirmed; remanded to correct sentencing order.

HARRISON, C.J., and GRUBER, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker Hawkins*, Ass't Att'y Gen., for appellee.