Cite as 2025 Ark. App. 214

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-24-640

| | | |
|---|---|---|
| ERIC FRANCIS | | Opinion Delivered April 9, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE |
| | | COUNTY CIRCUIT COURT |
| V. | | [NO. 58CR-23-380] |
| | | |
| STATE OF ARKANSAS | | HONORABLE JAMES DUNHAM, |
| | APPELLEE | JUDGE |
| | | |
| | | AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Eric Francis appeals an order of the Pope County Circuit Court convicting him of trafficking a controlled substance (fentanyl) and sentencing him to serve sixty years in prison and to pay a $1 million fine. In addition to challenging the sufficiency of the evidence to support the conviction, Francis contends that the circuit court erred in refusing an alternative-sentence instruction; abused its discretion in allowing late-disclosed evidence or alternatively denying his motion for continuance due to the late disclosure; and abused its discretion in admitting several pieces of evidence during the sentencing phase. We affirm.

In a second amended information filed on November 14, 2023, the State charged Francis with trafficking a controlled substance (fentanyl) pursuant to Arkansas Code Annotated section 5-64-440(b)(2) (Repl. 2024). A jury trial took place on February 21–22, 2024.

At trial, Officer Zachary Toben of the Russellville Police Department testified that on April 24, 2023, he initiated a traffic stop of a bluish-green Chevrolet Malibu with expired Oklahoma plates as it pulled into an Econo Lodge parking lot. Francis was the driver of the Malibu. A search of the vehicle revealed a piece of aluminum foil with burn marks and a partial blue pill, a plastic straw with residue and burn marks, and a glass pipe, all of which were found in a compartment on the dashboard above the stereo. Officer Toben said that he believed the partial pill was fentanyl and that the burn marks on the foil indicated that it had been used to smoke the fentanyl. Francis's wallet contained cards belonging to him and a debit or credit card bearing Melissa Ganyon's name. Officer Toben said that the investigation led officers to believe that room 129 of the Econo Lodge was occupied by Francis and Ganyon. The Econo Lodge management informed law enforcement that Samantha Harris had rented room 129 but was incarcerated and had informed management to remove anyone in the room if she became incarcerated. Motel staff provided the officers with a key to room 129.

Officer Toben said that he, along with Sergeant David Bevis and a motel employee, knocked on the door, but no one answered. When they used the key, the secondary "flap lock" was engaged, causing Sergeant Bevis to shoulder the door open. Ganyon was located in the bathroom, kneeling next to the toilet. The bottom half of a silver canister was on the floor next to "four M-30 tablets," and the other half of the silver container was attached to the sports bra Ganyon was wearing. Officer Toben believed the pills were fentanyl and that Ganyon was attempting to destroy evidence when they entered the motel room.

Officer Toben said there was a briefcase with a lock lying on the ground. He was attempting to open it when Ganyon stated that she did not know "his combination"—referring to Francis. Once the briefcase was opened, a Russellville Police Department citation bearing Francis's name and a locked canister were found inside. Officer Toben said that after unsuccessfully trying to break the canister open, they obtained the keys from the Malibu, which had a key that matched the lock on the canister. The canister contained thirty-one fentanyl pills. Other items were also found in the motel room, including aluminum foil, a plastic straw with residue, and a syringe.

Officer Toben stated that testing conducted at the Arkansas State Crime Laboratory determined that the thirty-one pills were 3.49 grams of fentanyl. The video from his body camera was introduced into evidence and played for the jury. In the video, when the officers were looking for a key to open the canister, Ganyon told officers that the key was on her keychain to the car. In addition, the video shows that Officer Toben asked Ganyon, "What stuff is yours and what stuff is [Francis's]?" Appearing to refer to items in an area of the room, Ganyon said everything was hers except two backpacks.

Sergeant Bevis, who assisted Officer Toben with the investigation of the traffic stop on April 24, testified that he determined Francis's car was "connected" to room 129 of the Econo Lodge and believed that Francis and Ganyon occupied the room even though it was registered to Harris, who was being held at the Pope County Detention Center. Sergeant Bevis said that it was not uncommon for people who rent a room in an area where they live to have a third party rent it for them.

Regarding the briefcase that was found in the motel room on April 24, Sergeant Bevis described it as a Kenneth Cole Reaction "leather or pleather" briefcase with silver metal accents. Its front flap was lockable with a code. In his body-camera video, Sergeant Bevis noted that the citation found in the briefcase had Francis's date of birth and driver's license number on it. He further stated that he followed up and confirmed that Francis had an active citation at that time.

Sergeant Bevis also testified that six days earlier, on April 18, he conducted a traffic stop of a Chevrolet Malibu with Oklahoma tags. Francis, who was the sole occupant of the vehicle, told Sergeant Bevis that he had recently purchased the vehicle from Ganyon and provided a bill of sale written on an index card. During a search of Francis, Sergeant Bevis found aluminum foil, which had burn marks from smoking fentanyl. The sergeant stated that during the April 18 traffic stop, he observed the same black Kenneth Cole briefcase in Francis's vehicle and identified the briefcase in his body-camera video, which was played for the jury.

At the close of the State's case, Francis moved for a directed verdict, arguing that the State's evidence was legally insufficient for a reasonable jury to conclude that the fentanyl pills belonged to him as opposed to Ganyon and that the State failed to provide sufficient evidence linking Francis to the pills for it to be constructive possession. The circuit court denied the motion. The defense rested without presenting any evidence and renewed its motion for directed verdict, which was denied. The jury found Francis guilty of trafficking fentanyl. This appeal followed.

I. *Sufficiency of the Evidence*

Francis first contends that there is insufficient evidence that he constructively possessed the fentanyl. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Edwards v. State*, 2024 Ark. App. 431, at 2. A conviction will be affirmed if substantial evidence exists in the record to support it, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Guilt can be established without direct evidence; evidence of guilt is not less because it is circumstantial. *Gonzales v. State*, 2019 Ark. App. 600, at 12, 589 S.W.3d 505, 513. Circumstantial evidence is substantial when it excludes every reasonable hypothesis consistent with innocence; whether it does so is usually a jury question. *Gibout v. State*, 2024 Ark. App. 568, at 6, 702 S.W.3d 404, 409.

Under Arkansas law, possession may be established by proof of actual possession or constructive possession. *Edwards*, 2024 Ark. App. 431, at 3. Constructive possession is the control of or right to control the contraband. *Id.* Constructive possession may be established by circumstantial evidence and can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Szczerba v. State*, 2017 Ark. App. 27, at 7, 511 S.W.3d 360, 365.

Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. *Edwards*, 2024 Ark. App. 431, at 7. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be

some additional factor linking the accused to the contraband. *Id.* In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. *Id.* Control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.*

Francis argues that the State failed to prove he constructively possessed the fentanyl pills because he was not in the motel room when the pills were found; the motel room was registered to a third party; there was no evidence he was in possession of a key to the motel room; there was no evidence that he had previously been in the room; Ganyon, who was the only person in the room at the time of the search, did not identify the briefcase as belonging to Francis; the key to the container with the pills was on Ganyon's keychain; no drugs were found on Francis; and Francis did not exhibit suspicious or nervous behavior. In light of these facts, Francis argues that the State failed to prove he was in exclusive control of the contraband or that he was inextricably linked to the contraband.

In support of his argument, Francis cites several cases: *Lucas v. State*, 2023 Ark. App. 306, 669 S.W.3d 266; *Garner v. State*, 2020 Ark. App. 101, 594 S.W.3d 145; and *Gwatney v. State*, 75 Ark. App. 331, 57 S.W.3d 247 (2001). In each of these joint-occupancy cases, convictions based on circumstantial evidence of constructive possession of contraband were reversed due to insufficient evidence linking the defendant to the contraband. For example, in *Lucas*, police found Lucas sleeping on the porch of his father's house about twenty yards

from a truck that was unlocked with its windows down and where drugs were found in plain view. There were no drugs found on Lucas, no evidence as to the ownership of the truck, and no evidence that Lucas had driven the truck recently; the keys to the truck were not located. In reversing, this court held that there was a lack of evidence that the truck was in Lucas's sole, exclusive possession. *Lucas*, 2023 Ark. App. 306, at 6, 669 S.W.3d at 269–70.

In *Garner*, this court held that there was insufficient evidence linking Garner to a metal tin containing a glass pipe in the kitchen of a jointly occupied home because Garner was outside the house on a walk when the search began, and he did not have any methamphetamine on his person. 2020 Ark. App. 101, at 12, 594 S.W.3d at 153. In *Gwatney*, this court held that there was insufficient evidence linking Gwatney to drug paraphernalia found in a chest in his girlfriend's bedroom. Although there was evidence that Gwatney brought the chest into the bedroom, it had been there for at least a week before the paraphernalia was found, many people had access to the room during that time, and Gwatney did not have drug paraphernalia on his person. In light of this evidence, this court concluded that the contraband was not found in a place immediately and exclusively within Gwatney's control, and there was no proof of additional factors linking him to the contraband. *Gwatney*, 75 Ark. App. at 336, 57 S.W.3d at 251.

There are similarities in the cases on which Francis relies. Lucas and Garner were not inside the truck or the home when the contraband was found, and Francis was not in the motel room. Lucas, Garner, and Gwatney were not the only people with access to the area where contraband was found, and Francis was not the only person with access to the motel

7

room. However, unlike the facts in *Lucas*, *Garner*, and *Gwatney*, there was evidence that established that Francis had sole, exclusive control of the black briefcase in which the locked canister containing fentanyl was discovered.

The State presented evidence that the briefcase was found in a motel room believed to be occupied by Francis and Ganyon. Contrary to Francis's argument that there was no evidence that he had been in the motel room, in the body-camera video, Ganyon identified some items in the room as belonging to Francis. The briefcase itself had a lock, and Ganyon said that she did not know "his" combination and that she did not think "he" had the code anymore—referring to Francis. On April 18, six days before the fentanyl pills were found, Francis was pulled over by police, and he was the sole occupant of the Malibu, which he said he purchased from Ganyon and for which he provided a bill of sale. The same black briefcase was found in the Malibu. When the black briefcase was opened on April 24 in the motel room, it contained Francis's recent citation and a locked canister. The key that unlocked the canister was in Francis's control and possession when he was pulled over on April 24; it was on the same keychain as the keys to the car, which he had just days before told police that he owned, having recently purchased it from Ganyon and provided a bill of sale. In addition to this evidence, when Francis was stopped on April 18, he had a piece of foil on his person with burn marks consistent with smoking fentanyl. And when he was stopped on April 24, a burnt fentanyl pill was found on a piece of foil on a compartment in the dashboard. We hold that this is substantial evidence linking Francis to the fentanyl pills inside the black briefcase found in the motel room. *See Dougan v. State*, 2023 Ark. App. 75, at 5–6, 660

S.W.3d 375, 379–380 (affirming constructive-possession conviction, noting that in addition to the contraband found in the jacket, the money Dougan asked police to retrieve from the apartment after his arrest and Dougan's identification were inside its pockets).

Francis also argues that other reasonable hypotheses exist, making the circumstantial evidence insufficient to support his conviction. He suggests that the fentanyl could have been possessed by Ganyon (who was in the motel room) or Harris (who rented the motel room). However, the jury is entitled to believe the State's account of the facts over the defendant's and can decide whether circumstantial evidence excludes every other reasonable hypothesis. *Dougan*, 2023 Ark. App. 75, at 5, 660 S.W.3d at 379; *Gibout*, 2024 Ark. App. 568, at 6, 702 S.W.3d at 409; *Terry v. State*, 2018 Ark. App. 435, at 7, 559 S.W.3d 301, 305.

Finally, in his reply brief, Francis challenges the State's account of the facts about whether Francis occupied the motel room or whether the keys were on Francis's keychain. These are matters of weight and credibility of the evidence. On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. *Loggins v. State*, 2010 Ark. 414, at 4, 372 S.W.3d 785, 789.

In conclusion, we hold that the evidence viewed in the light most favorably to the State sufficiently links Francis to the fentanyl in the locked canister found in the black briefcase discovered in the search of the motel room. Accordingly, we hold that substantial evidence supports Francis's conviction for trafficking fentanyl.

II. *Alternative-Sentence Instruction*

9

Francis contends that the circuit court erred in refusing to give an alternative-sentencing instruction due to its misunderstanding of the law. Specifically, he argues that the circuit court erroneously ruled that the alternative-sentencing instruction is not permitted in a prosecution for fentanyl trafficking.

Arkansas Code Annotated section 16-97-101(4) (Repl. 2016) provides that the court, in its discretion, may instruct the jury that counsel may present alternative sentences for which the defendant may qualify. The jury, in its discretion, may then make a recommendation as to an alternative sentence; this recommendation, however, shall not be binding on the court. Ark. Code Ann. § 16-97-101(4) (Repl. 2016). The decision to allow alternative sentencing is reviewed for an abuse of discretion. *Squyres v. State*, 2015 Ark. App. 665, at 9, 476 S.W.3d 839, 845. This standard of review is a high threshold, requiring that a circuit court not act improvidently, thoughtlessly, or without due consideration. *Id.* at 9, 476 S.W.3d at 845.

The circuit court gave two independent reasons in denying Francis's request. In addition to ruling that an alternative sentence did not "appear to be authorized by law," the circuit court ruled:

> Separately, and as an independent basis under the circumstances of the defendant's criminal history in his failed efforts at alternative sentences and alternative sanctions in the past, it wouldn't be one that would be proper under the circumstances. So the Court will separately exercise discretion not to include that instruction because such an alternative sentence wouldn't be proper under the circumstances of the case.

Francis fails to challenge the separate basis for the circuit court's denial of the instruction—that an alternative sentence would not be proper because of Francis's history of

failed efforts when given alternative sentences in the past. When an appellant fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse. *Barber v. State*, 2015 Ark. App. 120, at 5 (citing *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002)).

### III. *Late Disclosure of Evidence and Denial of Motion for Continuance*

For his third point on appeal, Francis contends that the circuit court abused its discretion in admitting evidence that was disclosed by the State just days before trial. Francis identifies the challenged items as records related to his criminal history from Washington County and body-camera footage from the April 18 traffic stop. Francis contends that he did not receive the video until one "business day" before the February 20, 2024 trial[1] and that the footage played a significant part in the State's case because it showed Sergeant Bevis's April 18 discovery of the black briefcase in Francis's vehicle, which the State argued was the same briefcase found in the motel room on April 24. He claims he was prejudiced by the admission of this late-disclosed evidence because he did not have time to investigate how many of the same types of briefcases have been produced and sold around the country. He also claims that prejudice is demonstrated by the jury's sixty-year sentence because the State asked the jury to sentence Francis to only thirty-one years' imprisonment—one year for each pill.

The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Kuykendall v. State*, 2024 Ark. App. 129, at 5, 685

---

[1]It appears the State provided the video on a Friday, the following Monday was a holiday, and the trial began on Tuesday.

11

S.W.3d 289, 292. It is within the circuit court's discretion to determine what sanction, if any, to employ. *Id.* at 6, 685 S.W.3d at 292.

Rule 19.7(a) of the Arkansas Rules of Criminal Procedure provides that in response to a violation of a discovery rule, the circuit court may permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing into evidence the material not disclosed, or enter such other order as it deems proper under the circumstances. Our supreme court has said that the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Kuykendall*, 2024 Ark. App. 129, at 6, 685 S.W.3d at 292 (citing *Bray v. State*, 322 Ark. 178, 908 S.W.2d 88 (1995)). In order to show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed. *Id.*, 685 S.W.3d at 292. Under these standards, appellant has the burden of showing that the omission was sufficient to undermine the confidence in the outcome of the trial. *Id.*, 685 S.W.3d at 293.

The circuit court allowed the evidence in question because Francis was not surprised by it. This was not an abuse of discretion. In its witness and exhibit list timely filed on September 8, 2023, the State put Francis on notice that if sentencing occurred, it intended to have a person from the Washington County Drug Rehabilitation Program or from the Arkansas Division of Community Correction to describe "what drug court is, the rehabilitative services offered, and the benefits of completion, including but not limited to the sealing of felony convictions. They will explain Mr. Francis had the benefit of the

program and had numerous offenses sealed upon his conviction." The State also listed its intention to introduce copies of his felony convictions.[2]

The State's September 8 witness and exhibit list also provided notice to Francis of the nature of Sergeant Bevis's testimony that included his traffic stop of Francis the week before April 24, when the sergeant learned that Francis had purchased the Malibu from Ganyon; the State also listed "body camera footage" as an exhibit. The State explained that it originally intended to offer Sergeant Bevis's testimony about the April 18 stop and not the video, but when Francis's counsel informed the State the week before trial of his intention to argue that Ganyon constructively possessed the fentanyl at issue, the State requested a copy of the body-camera video to "solidify its position" that Francis said that he bought the car from Ganyon and provided a bill of sale as well as the sergeant's discovery of the black briefcase in the Malibu. The record reveals that the video corroborates the police report from the April 18 incident, which the State provided to the defense on August 3. On this record, we cannot say that the circuit court abused its discretion in allowing the introduction of the Washington County criminal records and the April 18 video because there was no surprise by the late disclosure of this evidence.

We further note that Francis has failed to establish prejudice by the admission of the April 18 body-camera video. If this video had been excluded, Sergeant Bevis would have

---

[2]At the pretrial hearing, the State indicated that it had requested these records from the Washington County clerk but did not receive them until "just recently" and that it provided the records to Francis immediately upon receipt.

testified about finding the briefcase during the April 18 traffic stop. Moreover, the jury was presented with evidence that Ganyon referred to the briefcase in the motel room as belonging to Francis when she referred to "his" code or combination. Therefore, the body-camera video was cumulative to the testimony of Sergeant Bevis and Ganyon. We have refused to find prejudicial error when the evidence in question was merely cumulative to other evidence admitted at trial. *McDaniel v. State*, 2021 Ark. App. 340, at 4–5, 634 S.W.3d 562, 565.

Alternatively, Francis argues that should we affirm the circuit court's admission of the late-disclosed evidence, we should reverse the circuit court's denial of his motion for a continuance. He contends that he was "blindsided" by the late disclosures and did not have sufficient time to review the evidence before trial. As discussed above, because there was no surprise to Francis and he cannot demonstrate prejudice, we hold that the circuit court did not abuse its discretion in denying Francis's motion for a continuance.

IV. *Admission of Evidence During Sentencing*

For his final argument, Francis contends that the circuit court abused its discretion in admitting several pieces of evidence during sentencing that he claims are inadmissible. These items include a 2023 sentencing order convicting Kaitlyn Buber of possession of fentanyl,[3] an order showing that seven of Francis's Washington County criminal cases had been transferred into a pre-adjudication drug court, and an order dismissing and sealing

---

[3]Buber and Francis were involved in a separate drug-related incident in October 2022.

another one of Francis's criminal cases. Francis makes several arguments in support of his position that the circuit court abused its discretion in admitting this evidence; however, we do not reach the merits of these arguments because Francis cannot demonstrate prejudice by the admission of this evidence.

A defendant who is sentenced within the statutory range—and short of the maximum sentence—cannot establish prejudice. *Tate v. State*, 367 Ark. 576, 583, 242 S.W.3d 254, 261 (2006) (declining to decide alleged sentencing-phase error because the defendant received less than the maximum sentence and therefore could not establish a prejudicial error). For an unclassified felony, the sentence shall be in accordance with a limitation of the statute defining the felony. Ark. Code Ann. § 5-4-401(6) (Repl. 2024). Arkansas Code Annotated section 5-64-440(c)(2) provides that trafficking of fentanyl is an unclassified felony with a sentence of imprisonment not less than twenty-five years nor more than sixty years, or life, and a fine of $1 million.

Here, Francis was sentenced to sixty years' imprisonment and a $1 million fine. The maximum possible sentence he could have received was life in prison and a $1 million fine. Francis's sentence was less than the possible maximum; thus, he cannot demonstrate prejudice from the sentence. Because Francis cannot establish prejudice from the sentence, we need not consider his challenge to the admission of evidence during sentencing. *Tate*, 367 Ark. at 583–84, 242 S.W.3d at 261; *see also Holley v. State*, 2014 Ark. App. 557, at 8, 444 S.W.3d 884, 889.

Affirmed.

15

TUCKER and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.