Cite as 2026 Ark. App. 68

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-25-129

|  |  |
|---|---|
| | Opinion Delivered February 4, 2026 |
| AMANDA MARIE ADAIR | |
| APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-23-220] |
| V. | |
| | HONORABLE CREWS PURYEAR, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**CINDY GRACE THYER, Judge**

Amanda Marie Adair appeals her Drew County convictions for trafficking fentanyl and possession of methamphetamine with purpose to deliver. On appeal, she asserts there was insufficient evidence to support her convictions. We disagree and affirm.

On December 11, 2023, Commander James Slaughter and Agent Ben Michel of the Tenth Judicial District Drug Task Force stopped Adair's vehicle.[1] Adair was a passenger in the vehicle at the time of the stop. Commander Slaughter had both the driver and Adair exit the vehicle. While Agent Michel spoke to the driver of the vehicle, Commander Slaughter spoke with Adair.

---

[1]Adair's father rented the vehicle for her.

Commander Slaughter advised Adair of her *Miranda* rights, informed her of the purpose of the stop, and explained that he could smell marijuana in the vehicle. Adair stated that she lived in Oklahoma but had an Arkansas medical marijuana card. To see how she would react, Commander Slaughter told Adair that he could call the Drew County drug canine to the scene. He explained that the dog would not alert on marijuana but could detect other substances in the vehicle. At this, Adair became "very nervous," started crying "tremendously," and stated that she wanted to talk with him. Adair then admitted she had marijuana in her purse but claimed there were other things in the vehicle that were not hers. She explained there had been somebody else in the car earlier and that they had smoked something.

When Commander Slaughter searched her purse, he found marijuana and a zipper bag containing one small and one large package of methamphetamine; what he believed, in light of his experience, to be alprazolam (Xanax); and two bottles of blue pills with M-30 inscribed on them. The markings on the blue pills are typically used to denote oxycodone but could also be "fake oxycodone" or fentanyl mixed with acetaminophen disguised as oxycodone. For officer safety in handling the pills, Commander Slaughter asked Adair if there was any chance the pills could be fentanyl, and she responded, "They're 100 percent fentanyl (inaudible)."

While they were talking, Adair handed Commander Slaughter her phone and asked if he would call somebody for her. As he was doing so, text messages popped up on the screen, which appeared to reference possible drug transactions.

On the basis of the foregoing, Adair was arrested and charged with trafficking fentanyl, possession of methamphetamine with purpose to deliver, and possession of alprazolam with purpose to deliver. Commander Slaughter also seized her phone and had the text messages extracted.

At trial, Commander Slaughter testified to the facts as stated above. In addition to Commander Slaughter, the State called as witnesses Reece Borcher, the forensic chemist from the state crime lab; and Shawn Curtis with the Monticello Police Department.

Borcher testified that he tested both the blue pills and the suspected methamphetamine, but not the suspected alprazolam. The blue pills tested positive for fentanyl and acetaminophen. It was determined that the suspected methamphetamine was approximately 1.6653 grams of methamphetamine. The report with his analysis was admitted into evidence.

Curtis testified that he conducted the mobile forensic analysis on Adair's cell phone and extracted her text messages, some of which were admitted into evidence. Commander Slaughter then explained how those messages were indicative of drug transactions. The State also introduced Adair's Venmo profile picture taken from the phone to prove the phone was hers.

At the close of the State's case, Adair moved for a directed verdict on all three counts. The court denied the motion. Adair rested without calling any witnesses and renewed her motions for directed verdict, which were again denied.

The jury returned guilty verdicts on the fentanyl and methamphetamine charges. She was sentenced to thirty years' imprisonment in the Arkansas Division of Correction on the trafficking charge and ten years' imprisonment on the possession charge, to run concurrently. The jury, however, acquitted Adair on the alprazolam charge. She timely filed her notice of appeal.

On appeal, Adair claims there was insufficient evidence to support her convictions. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Edwards v. State*, 2024 Ark. App. 431. A conviction will be affirmed if substantial evidence exists in the record to support it, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Guilt can be established without direct evidence; evidence of guilt is not less because it is circumstantial. *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505. Circumstantial evidence is substantial when it excludes every reasonable hypothesis consistent with innocence; whether it does so is usually a jury question. *Gibout v. State*, 2024 Ark. App. 568, 702 S.W.3d 404.

Here, Adair was convicted of trafficking fentanyl and possession of methamphetamine with purpose to deliver. Arkansas Code Annotated section 5-64-440(b)(2) (Supp. 2023) states that a person engages in trafficking a controlled substance if he or she possesses, possesses with the purpose to deliver, delivers, or manufactures (among other things) one gram or more of fentanyl. Likewise, Arkansas Code Annotated section 5-64-

4

420(a) (Supp. 2023) makes it unlawful for a person to possess methamphetamine with the purpose to deliver it.

As for the trafficking charge, Adair argues that there is insufficient evidence that she actually or constructively possessed fentanyl as required by the trafficking statute. She notes that the car was being driven by someone else and that she had informed Commander Slaughter that someone else had smoked "something" in her car. She also notes that she admitted to Commander Slaughter that the marijuana was in her purse but that there were items in the vehicle that were not hers. She asserts that, although the zippered bag was found in her purse, there was more than one occupant in the vehicle and that the bag could have been placed in her purse by the driver or one of the former occupants. She argues that because the jury was left with two reasonable explanations of who actually possessed the fentanyl, her conviction should be reversed.

Under Arkansas law, possession may be established by proof of actual possession or constructive possession. *Edwards*, *supra*. Constructive possession is the control of or right to control the contraband. *Id.* Constructive possession may be established by circumstantial evidence and can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Szczerba v. State*, 2017 Ark. App. 27, 511 S.W.3d 360.

Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. *Edwards*, *supra*. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor

5

linking the accused to the contraband. *Id.* In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. *Id.* Control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.*

There was sufficient evidence here. The car had been rented for Adair. The purse in which the zippered bag was found was Adair's. She readily identified the pills as fentanyl even though they appeared to be oxycodone. Additionally, there were text messages on her phone that referenced "blues." One stated, "I can do 20 blue for the half"; one said, "I got every blues sold when you get back"; and one said, "Not shit . . ; About to be heading out . . . Got some blues though if you're interested." Finally, another said, "I'll buy one from you save a couple of those blues for me if you can and please." Commander Slaughter testified that "blue" is the street name for what people on the street call fentanyl pills (M-30s). Taken together, there was sufficient evidence to show that Adair had control over the fentanyl and knowledge that the pills were fentanyl. Thus, her conviction for trafficking fentanyl should be affirmed.

As for the methamphetamine charge, she argues first that there was insufficient evidence to establish that she possessed the methamphetamine and, second, that there was insufficient evidence that she had the purpose to deliver it.

Regarding the sufficiency of the evidence as to possession, she raises the same arguments as above with the fentanyl. For the same reasons that supported a finding that

she possessed the fentanyl, there was sufficient evidence to find that she possessed the methamphetamine. The methamphetamine was in Adair's purse, which was with her in a car her father had rented for her. And as with the fentanyl, there were text messages that Commander Slaughter linked to a discussion regarding the purchase and sale of methamphetamine. Commander Slaughter testified that a "ball" or an "eight ball" was used to denote an eighth of an ounce of methamphetamine. One of the messages on her phone stated, "If you want and I need a ball." Another said, "I just need a ball 45$ ball." There was also a text message that said, "Balls are usually 60.. was gonna do 50 then I got rushed as I'm weighing . . . ." And later, "It'll be $70 for the ball to get me back out." As with the fentanyl, when these facts are taken together, there was sufficient evidence to show that Adair had knowledge of and control over the methamphetamine.

Regarding the sufficiency of the evidence on the purpose-to-deliver element, she states that there were two small bags of methamphetamine found in her purse, and the amounts were consistent with personal use. She further stated that the multiple types of controlled substances found in her purse were consistent with a user who trades drugs for personal use and consistent with the text messages that indicate that drugs were only being traded. She points out that the police did not find any firearms; large sums of money; or any means to weigh, separate, or package the methamphetamine—that is, items associated with delivery of a controlled substance. As such, she claims the evidence was insufficient to prove a purpose to deliver. We disagree.

Arkansas Code Annotated section 5-64-420(a) provides that the purpose to deliver may be shown by any of the following factors:

(1) The person possesses the means to weigh, separate, or package methamphetamine, heroin, or cocaine;

(2) The person possesses a record indicating a drug-related transaction;

(3) The methamphetamine, heroin, or cocaine is separated and packaged in a manner to facilitate delivery;

(4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine, heroin, or cocaine;

(5) The person possesses at least two (2) other controlled substances in any amount; or

(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine, heroin, or cocaine.

Here, the jury could have found that the methamphetamine was packaged in such a way that facilitated delivery (factor 3) and that the text messages found on her phone indicated her intent to engage in drug transactions, including the delivery of methamphetamine (factor 6). In light of the foregoing, there was sufficient evidence to support her conviction for possession of methamphetamine with purpose to deliver.

For these reasons, we affirm.

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

8