Cite as 2014 Ark. 416

# SUPREME COURT OF ARKANSAS

No. CR14–347

| | | |
|---|---|---|
| | | **Opinion Delivered** October 9, 2014 |
| KEVIN McMILLER | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CR-12-291] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE |
| | | <u>AFFIRMED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

A Jefferson County jury convicted Kevin McMiller of capital murder, aggravated residential burglary, kidnapping, and rape. He was sentenced by the jury to life without parole for capital murder and life sentences for the other offenses, all to be served consecutively in the Arkansas Department of Correction. His sole argument on appeal is that the circuit court erred in denying his objection to the State's use of peremptory challenges in violation of the law promulgated in *Batson v. Kentucky*, 476 U.S. 79 (1986). Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2013). We affirm.

It was established at trial through the testimony of D.O., the seventeen-year-old victim of the kidnapping and rape, and through McMiller's confession that on March 22, 2012, McMiller perpetrated the above-referenced crimes. Because McMiller does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. After D.O., McMiller's girlfriend, acceded to her mother's entreaty to break up with him, McMiller tried repeatedly, but unsuccessfully, to contact D.O. by phone. He then took one

of his mother's kitchen knives and went to the residence that D.O. shared with her mother, Shirley Owney. When McMiller overheard Shirley Owney disparage him, McMiller leaped through a bedroom window into the residence. He caught Owney in the kitchen and repeatedly stabbed her, causing her death. McMiller then put the knife to D.O.'s throat and forced her to accompany him to a deserted house where he raped her.

In his only argument on appeal, McMiller asserts that the circuit court erred in denying his *Batson* challenge. He contends that there was purposeful discrimination in that "of the eight strikes used by the State, six [sic] were strikes of black potential jurors," which resulted in him, an African American, being tried by an all-white jury.

During voir dire, of the eight peremptory challenges made by the State, five of the jurors struck were African Americans. McMiller asserted, at trial and on appeal, that this demonstrated a pattern of systematic discrimination. While the circuit court made no finding of systematic discrimination, upon McMiller's assertion of a *Batson* violation, the State volunteered race-neutral explanations for its challenges. The State noted that during questioning, Venoit Morgan and Lois Reed expressed doubt about their ability to sit in judgment over someone, and following a denial of its motion to strike them for cause, it used peremptory challenges to remove them from the jury. Further the State claimed that it struck Theresa Helms because she would "not interact" and was young and unemployed. The State explained that it struck Catha Hicks because she had deadlines on her job and her mind was "not in the courtroom." The State further asserted that Hicks said she could not judge and that her husband and her son had previously been charged with felony offenses.

The State stated that Sterling Linton II was struck because he did not respond or have any interaction during questioning. One other African American juror was drawn from the venire, but she was struck by the defense. The circuit court noted that it was not asked to rule whether the use of peremptory strikes established a systematic effort to exclude African Americans from the panel. Nonetheless, the circuit court did find that the State gave a reasonable race-neutral explanation for its strikes and denied McMiller's *Batson* challenge.[1]

*Batson v. Kentucky* held that the State in a criminal case may not use its peremptory strikes to exclude jurors solely on the basis of race. *Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009). At trial, a three-step process is required to effectuate the dictates of *Batson* and its progeny. *Id*. First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. *Id*. Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strikes. *Id*. Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. *Id*. On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Id*. Some deference is accorded the circuit court in making this decision because it has the opportunity to observe the parties and determine their credibility. *London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003).

At trial, McMiller essentially conceded that two of the strikes, Venoit Morgan and

---

[1]When the State offered a race-neutral explanation for its strikes, it rendered moot the circuit court's failure to make an initial determination whether defendant had made a prima facie showing of discriminatory intent. *London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003).

SLIP OPINION

Lois Reed, were valid because they followed unsuccessful challenges for cause after both potential jurors expressed doubt about their ability to sit in judgment over someone. Likewise, McMiller does not challenged the validity of the State's rationale for their challenge on appeal. However, McMiller does argue that the reasons the State offered for challenging Helms, Hicks, and Litton, were not valid.

McMiller asserts that it was improper for the State to strike Helms because she was young and unemployed and did not respond to questioning. However, we note that the State further justified its strike by asserting that it also struck Nicholas Prater, a white man, who, like Helms, was also young and unemployed. Given that similarly situated venire persons of different races were treated the same, we cannot say that the circuit court's decision that this explanation was race-neutral was clearly against the preponderance of the evidence. *Jackson v. State*, *supra*.

Regarding the State's use of a peremptory challenge to remove Hicks from the jury, at trial, the State claimed that its decision to strike Hicks was because she had deadlines on her job and "her mind just was not in the courtroom." Additionally, the State noted and her husband and son had previously been charged with felony offenses. McMiller neither refutes these reasons nor argues that the reasons given by the State are not race-neutral explanations. Accordingly, we cannot say that the circuit court clearly erred in finding that the State's explanation for striking Hicks was race-neutral.

Finally, we cannot say that the circuit court clearly erred in failing to find that the strike of Sterling Linton II, violated *Batson*. As noted, the State's race-neutral reason for the

strike was that Linton did not respond or have any interaction during questioning, and he was just "staring off into space." On this issue, we defer to the circuit court as the arbiter of credibility as it was in a superior position to observe both Linton's interaction and the prosecutor's demeanor in asserting its race-neutral reason. We hold that the circuit court did not clearly err in denying McMiller's *Batson* challenge.

Pursuant to Arkansas Supreme Court Rule 4-3(i) (2013), the record has been reviewed for all objections, motions, and requests that were decided adversely to McMiller and no prejudicial error has been found.

Affirmed.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.