Cite as 2025 Ark. App. 515

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-25-154

| | |
|---|---|
| JEREMY EDWARD LEE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered October 29, 2025<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. 22CR-24-95]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

A Drew County jury convicted Jeremy Edward Lee of one count of possession of methamphetamine with purpose to deliver.[1] He was sentenced as a habitual offender to 360 months in the Arkansas Division of Correction. He appeals this conviction, arguing that (1) there was insufficient evidence to support his conviction; (2) the circuit court erred in denying his *Batson* challenge;[2] and (3) the circuit court erred in admitting evidence of his prior conviction during the guilt phase of his trial. Finding no reversible error, we affirm.

---

[1]This is a companion case to two other cases, 22CR-20-10 and 22CR-20-141; a bench trial on those two cases was held simultaneously with the jury trial in this action. Appeals from those revocations are the subject of appeals in *Lee v. State*, 2025 Ark. App. 516 (CR-25-155), and *Lee v. State*, 2025 Ark. App. 513 (CR-25-156), which are also handed down today.

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

I. *Factual and Procedural History*

In June 2024, Commander James Slaughter of the Tenth Judicial Drug Task Force initiated a traffic stop of a white SUV after he saw it make a turn without using a turn signal. Jeremy Lee was the driver and sole occupant of the SUV.

Upon stopping Lee, Commander Slaughter asked for Lee's driver's license and proof of insurance. Lee was cooperative and explained that his license had been suspended. As Lee was talking to him, Commander Slaughter noticed Lee had something white in his right hand. When Lee reached toward the glove box for his proof of insurance, Commander Slaughter saw him drop whatever was in his hand onto the floor of the vehicle by the passenger's seat.

Commander Slaughter called for assistance. When backup arrived, Commander Slaughter had Lee exit the vehicle while they conducted a search. After being advised of his *Miranda* rights,[3] Lee told officers that the item he had placed on the floor was methamphetamine. A search of the car revealed four small individual bags of suspected methamphetamine and a cell phone. Lee was arrested and charged with possession of methamphetamine with intent to deliver.

Before trial, the parties discussed the admissibility of Lee's prior conviction for possession of methamphetamine with intent to deliver. The State indicated its intent to introduce the prior conviction if Lee took the stand and placed his intent or knowledge at

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

issue. Defense counsel agreed the prior conviction would be admissible if Lee testified and denied the conviction. The State responded that Lee did not have to deny the conviction; he needed only to deny having the intent to sell the narcotics. The court did not make a ruling on the admissibility of the prior conviction at that time.

In a bench conference during voir dire, defense counsel made a *Batson* challenge:

> First of all, let me for the record state that my client is Black. This is just for the record. Ms. Fortenberry has provided me with the strikes, and among those strikes there are one, two, three prospective jurors who are Black, at least in the first 20. Actually, there's four. There's five. One was struck for cause which I have no objection. The only Black person in that first 20 that was not struck was the one who said he worked on Brett Norton's car and is friends with Brett Norton.[4] Otherwise, all the other Black jurors were stricken. And I'm asking for a (inaudible) why the others were stricken.

The three jurors the State sought to strike were juror numbers 196, 153, and 79. The State argued that juror 196 had not turned in her questionnaire, was not paying attention, was looking at the ground, and was "halfway asleep." As for juror 153, she was extensively questioned on voir dire. She had previously stated both in court and in her questionnaire that she could not be fair; that she had ill will toward the criminal justice system; and that her son was currently in prison. She also waffled on whether she could consider the maximum punishment for the crime. The defense stated it accepted the court's reasoning for striking juror 153. As for juror 79, the prosecutor stated that she used to work with juror 79; that juror 79 had tried multiple times to get out of jury duty; and that she had recently sent juror 79's uncle to prison.

---

[4]Brett Norton is a Drew County police officer.

After hearing the State's explanations, the court denied the *Batson* challenge. The court stated that it would have been surprised if the State had not used a strike on juror 79 because of her history with the prosecutor. As for juror 153, the court stated that it understood the reasoning behind that strike given that she was almost struck for cause and because of her back and forth responses with counsel during questioning. As for juror 196, the court stated that, while it had not noticed the inattentiveness of the juror, it could not find that the strike was made on the basis of race, given the race-neutral reasoning for the strike and the strength of reasoning on the other strikes.

In the end, two Black jurors were placed on the jury: jurors 173 and 106.

At trial, Commander Slaughter testified regarding the traffic stop, the subsequent search, Lee's statements, and the discovery of the methamphetamine and cell phone. He explained that several text messages found on the phone discussing "smoke," "gas," "3.5," and "eighth" likely referred to drug transactions because those words were commonly used by drug users and dealers. As for the methamphetamine, he testified that the drugs were packaged in separate bags as if for resale; that is, each bag was packaged for individual use. He further noted that it is uncommon for a person to separate the person's personal drugs in such a manner or to buy four individual bags in different weights just for personal use. He did admit, however, that Lee had denied selling drugs and that it was possible that they could have been for Lee's personal use.

The State then admitted into evidence bodycam footage[5] from the traffic stop as well as the crime-lab report showing that one of the baggies had tested positive for methamphetamine.

At the end of Commander Slaughter's testimony, the prosecutor asked him if he was aware that Lee had previously been convicted of possession of methamphetamine with the purpose to deliver. Defense counsel objected to the question and approached the bench to request a mistrial. The court overruled the objection but stated it would advise the jury that the information could be considered only for purposes of proving Lee's "intent" but not for the purpose of proving Lee's bad character.

Trial was then recessed for lunch. It does not appear from our record that the question regarding Lee's prior conviction was repeated or was verbally answered by Commander Slaughter before the recess or that the admonition was ever given. No further testimony or evidence was presented. Instead, the record reflects that the trial simply proceeded straight to the parties' directed-verdict arguments.

After hearing all the evidence, the jury returned a guilty verdict and sentenced Lee to thirty years in the Arkansas Division of Correction. Lee filed a timely notice of appeal.

II. *Argument*

On appeal, Lee argues that (1) there was insufficient evidence to support his conviction; (2) the circuit court erred in denying his *Batson* challenge; and (3) the circuit

---

[5]Officer Dallas Parker Carter assisted with the search of Lee's vehicle. He was called solely for the purpose of admitting his bodycam footage.

court erred in admitting evidence of his prior conviction during the guilt phase of his trial. We address each argument in turn.

## A. Sufficiency of the Evidence

Lee's first argument on appeal is that there was insufficient evidence to support his conviction for possession of methamphetamine with intent to deliver. In reviewing a sufficiency argument, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*

Pursuant to Arkansas Code Annotated section 5-64-420(a) (Supp. 2023), it is unlawful for a person to possess methamphetamine with the purpose to deliver the methamphetamine. Lee admits that he possessed the methamphetamine in question. He challenges, however, the State's proof that he had the purpose to deliver the drugs.

Section 5-64-420(a) provides several factors that may be considered when determining whether a defendant has the purpose to deliver under the statute:

(1) The person possesses the means to weigh, separate, or package methamphetamine, heroin, or cocaine;

(2) The person possesses a record indicating a drug-related transaction;

(3) The methamphetamine, heroin, or cocaine is separated and packaged in a manner to facilitate delivery;

(4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine, heroin, or cocaine;

(5) The person possesses at least two (2) other controlled substances in any amount; or

(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine, heroin, or cocaine.

Lee asserts that there was no evidence that he had the means to weigh or separately package the drugs or that he possessed a firearm, other controlled substances, or large amounts of cash. He contends that the only factor under section 5-64-520(a) that would support a "purpose to deliver" finding is the fact that the methamphetamine was individually packaged but explains that Commander Slaughter testified that it was possible that the individually packaged methamphetamine could have been for Lee's personal use. Thus, it was mere speculation that he had the purpose to deliver. Commander Slaughter, however, also testified that packaging drugs in this way for personal use would be unusual but that it was very common with the sale of illegal drugs. He also testified that the text messages on the cell phone were indicative of drug transactions, another factor the statute states would support an intent-to-deliver finding; that is, it could be seen as a record indicating a drug-related transaction. Lee challenges this testimony, questioning the ownership of the phone and claiming that the jury was left to speculate what the terms "gas" and "smoke" in the text messages referred to. Again, the phone was located in the vehicle in which Lee was the sole occupant, and in Commander Slaughter's experience with the Drug Task Force, those terms related to drug transactions. Thus, there was evidence linking Lee to the phone and

7

explaining why those terms were relevant. It is for the jury to determine the weight and credibility to be given that evidence. *Collins v. State*, 2025 Ark. 137 (holding that the jury determines the credibility of witnesses as well as the weight and value of their testimony).

Thus, when we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict, we conclude there was sufficient evidence to support the jury's verdict. It is undisputed that Lee was in possession of methamphetamine that was individually packaged as if for sale, which is one of the factors expressly designated by statute to be used in determining whether a controlled substance was possessed with the purpose to deliver. Ark. Code Ann. § 5-64-420(a)(3). And when we add the evidence of Lee's communications about the purchase of illegal substances, there is substantial evidence to support the conviction.

## B. *Batson* Challenge

For his second argument on appeal, Lee argues that the circuit court erred in denying his *Batson* challenge. He claims that the circuit court erred in accepting at face value the State's race-neutral reasons for striking the jurors without determining whether the reasons given were pretextual or made with purposeful discrimination.

The general rule is that a prosecutor may exercise peremptory challenges on any basis related to the outcome of the case. However, a prosecutor may not use peremptory strikes to exclude jurors solely on the basis of race. *Batson*, *supra*; *Nelson v. State*, 2024 Ark. 24, at 10, 683 S.W.3d 177, 187–88. Striking jurors on the basis of race alone is a violation of the Equal Protection Clause of the Fourteenth Amendment. *Batson*, *supra.*

8

Once a challenge is made under *Batson*, the circuit court must conduct a three-step inquiry to determine whether a violation occurred. *McMiller v. State*, 2014 Ark. 416, 444 S.W.3d 363. First, the opponent of the peremptory strike must present facts to make a prima facie case of purposeful discrimination. *Id.* Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strike. *Id.* Unless discriminatory intent appears in the prosecutor's explanation, the reason given will be considered race neutral. *Flowers v. State*, 362 Ark. 193, 204, 208 S.W.3d 113, 122 (2005). Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. *McMiller*, *supra*. On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Id.* Some deference is accorded the circuit court in making this decision because it has the opportunity to observe the parties and determine their credibility. *Nelson*, *supra*.

Lee argues that the circuit court failed to engage in the third step, which requires the circuit court to weigh and assess the explanation given to decide whether, in light of all the circumstances, the proponent's explanation is or is not pretextual. *See MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). However, if the strike's opponent chooses to present no additional argument or proof but simply relies on the prima facie case presented, then the circuit court has no alternative but to make its decision on the basis of what has been presented to it, including an assessment of credibility. Thus, following step two, it is

incumbent upon the strike's opponent to present additional evidence or argument if the matter is to proceed further. *Id.*

Because Lee chose not to present any additional argument or proof that the State's reason for striking the jurors was not race neutral and was prejudicial, the circuit court was not obligated to proceed further but was required only to make a decision on the basis of what had been presented to it at that time. *See Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). The court in this instance did so. It not only considered it, but it discussed each juror in turn. It should also be noted that two Black veniremen were ultimately seated on the jury. That, in itself, can answer the charge of purposeful discrimination. *See Ratliff v. State*, 359 Ark. 479, 199 S.W.3d 79 (2004) (stating that the best answer the State can have to a charge of discrimination is to point to a jury that has Black members). Considering all the circumstances before the circuit court at the *Batson* hearing, the court's refusal to find a *Batson* violation was not clearly against the preponderance of the evidence.

## C. Prior Conviction

Finally, Lee argues that the circuit court erred in allowing the State to introduce evidence of his prior conviction for possession of methamphetamine with intent to deliver during the guilt phase of the trial. Commander Slaughter, however, never actually answered the question.[6] An unanswered question is not evidence and therefore, cannot be prejudicial.

---

[6]We note that, during closing arguments, the prosecutor stated, without objection, that Commander Slaughter had answered the question in the affirmative. As explained above, there is no record of any response to the question in the transcript of the proceedings. However, the jury was instructed before deliberations that the "closing arguments of the

10

*See Weist v. State*, 240 Ark. 680, 401 S.W.2d 565 (1996). And although the circuit court offered to give a limiting instruction to the jury, Lee failed to ensure that such an instruction was given. *Smith v. State*, 2024 Ark. 1, 680 S.W.3d 711. Just as a defendant's failure to request an admonition at trial cannot inure to his benefit on appeal, *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004), neither should his failure to ensure that an offered limiting instruction is actually given. Thus, we affirm on this point as well.

For the foregoing reasons, we affirm.

Affirmed.

BARRETT and WOOD, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.

---

attorneys are not evidence" and that "[i]f their argument or statement has no basis in the evidence, it should be disregarded by you." Juries are presumed to follow the instructions given to them by the court. *State v. Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000); *Logan v. State*, 300 Ark. 35, 776 S.W.2d 341 (1989).